In re Paul H. **SHUTTLEWORTH** and Denise M. **Shuttleworth**, Debtors.

Paul H. **SHUTTLEWORTH** and Denise M. **Shuttleworth**, Plaintiffs,

v.

**EQUIBANK, N. A.; Franklin Federal Savings & Loan Association of Pittsburgh; Three Rivers Bank & Trust Company; Pittsburgh National Bank; James H. McMaster; Joseph Horne Company and May Company,** Defendants.

Bankruptcy No. 80–937.
Adv. No. 80–872.

United States Bankruptcy Court,
W. D. Pennsylvania.

May 28, 1981.

Bernhard Schaffler, Pittsburgh, Pa., for plaintiffs Paul H. and Denise M. Shuttleworth.

Edward J. Kabala, Pittsburgh, Pa., for defendant James H. McMaster.

Mark L. Glosser, Pittsburgh, Pa., for defendant Three Rivers Bank & Trust.

Robert O. Lampl, Pittsburgh, Pa., Trustee.

## MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

Paul and Denise Shuttleworth filed a Chapter 13 petition under the Bankruptcy Code, on June 20, 1980. On October 14, 1980 the debtors filed a Complaint to Avoid Liens pursuant to 11 U.S.C. § 522(f). The debtors own certain real estate known as 1224 Manor Drive, Pittsburgh, Pennsylvania. The debtors have claimed an exemption of $15,800.00 in said property pursuant to 11 U.S.C. § 522(d)(1) and (5).

Equibank, N.A. holds a mortgage on the property for approximately $65,000.00. The defendants are record holders of judgments which are liens upon said real estate. The total amount of these judgments is approximately $124,044.00. On December 2, 1980 a hearing was held on the Complaint. Orders were entered by this Court on December 11, 1980, the following creditors having defaulted after motion pursuant to Rule 755, avoiding their liens: Equibank, N.A. (2 liens); Pittsburgh National Bank (2 liens); May Company; Franklin Federal Savings and Loan Association of Pittsburgh; Joseph Horne Company. Since the default orders were entered the first judgment in line of succession is Three Rivers Banks & Trust Company's judgment liens at A–GD79–22869 for $13,604.65 and B–GD79–22870 for $17,250.07, which were entered on August 27, 1979.

At the trial Mr. Gilman, a real estate broker and expert appraiser, concluded that the market value of the property was $82,000.00. He further testified that there would be a 5% to 7% sales commission, 2% transfer taxes and that the market for homes was very poor. Paul Shuttleworth, the debtor, testified that the property was purchased for $92,000.00 in 1975, that he listed the property for sale at $96,000–$99,000, and that he received no offers.

The plaintiffs argue that although the market value of the property is $82,000.00, the net realizable value would be approximately $73,800.00. The plaintiffs arrive at the $73,800.00 figure by deducting the transfer taxes and sales commission from the $82,000.00 market value. The defendants did not present any evidence to the contrary. Only Mr. McMaster filed an Answer to the Complaint wherein he avers that "... Defendant's lien may be avoided only as to plaintiff's residence in a maximum amount of $18,800.00."

The Bankruptcy Code defines value in § 522(a): "In this section ... (2) 'value' means fair market value as of the date of the filing of the petition."

"The generally accepted meaning of market value is that it is the amount which a reasonable willing buyer not under compulsion to buy would pay to a willing seller not under duress to sell." *In the Matter of James R. Willis, Jr.,* 6 B.R. 555, 6 B.C.D. 1101 (Bkrtcy., N.D.Ill.1980).

█ We cannot find case law which would support the finding that real estate commission, transfer taxes, etc. should be taken into account when determining the market value of real property. If an actual sale occurs, payment of transfer taxes would be certain. Transfer fees are allowed; however, a brokerage fee is not a certainty. It would be possible for a moving party-seller to sell without a broker. When an actual sale occurs, an exemption could be lost if the actual price will not support it. So it is with a lienholder, should the price not support the lien. To avoid a lien based on costs associated with a broker is to modify the meaning of market value.

If an actual sale occurred, payment of transfer taxes would be certain. The sales agreement would determine the party required to pay the taxes. Frequently each party pays 1%. An expert may utilize this consideration in determining fair market value. However, the utilization of a broker and the broker's fee is not a certainty. Property can be and is sold without a broker. The amount of the brokerage fee is not certain. In a distress sale a brokerage fee would not be paid without prior approval. Under these circumstances, for an expert to consider a broker's fee of 7% in the determination of market value would be too speculative. Fair market value as defined in § 522(a) does not contemplate the net value to be received after a brokerage fee is paid.

The Court finds the market value to be $82,000.00. When the mortgage of $65,000.00 is considered along with the debtors' exemptions of $15,800.00, this property would support a lien of $1,200.00. Thus the lien next in priority is allowed in the amount of $1,200.00, the remainder to become unsecured. All other liens are avoided as they impair the debtors' exemptions.

"When the debtor avoids the fixing of a lien, pursuant to § 522(f), however, the lien is avoided only to the extent of the exemption, and the value of the lien that exceeds the amount that is exempted may still be enforced by the creditor." 3 *Collier on Bankruptcy* (15th Ed.), Par. 522.30, pp. 522–30. Thus, the only lien allowed to remain is the lien of Three Rivers Bank & Trust Company, but only in the amount of $1,200.00. Mr. McMaster's lien is completely avoided as it is later in time to that of Three Rivers Bank & Trust and it interferes with the debtors' exemptions.