**In the Matter Of Gerald P. NELLIS, Susan M. Nellis, Debtors.**

**Gerald B. NELLIS and Susan M. Nellis, Plaintiffs,**

v.

**Gilbert L. ROSENBAUM, Trustee, City Savings Bank of Meriden, Middlesex Schools Federal Credit Union and Connecticut Bank and Trust Company, Defendants.**

**Bankruptcy No. 2–81–00183.
Adv. No. 2–81–0169.**

United States Bankruptcy Court,
D. Connecticut.

July 10, 1981.

---

Martin W. Hoffman, Hartford, Conn., for debtors-plaintiffs.

Gilbert L. Rosenbaum, Hartford, Conn., for trustee-defendant.

Daniel Shapiro, Middletown, Conn., for Middlesex Schools Federal Credit Union.

Susan W. Wolfson, New Haven, Conn., for Connecticut Bank and Trust Co.

John Hogrogian, Meriden, Conn., for City Sav. Bank of Meriden.

## MEMORANDUM AND DECISION

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

On April 7, 1981, Gerald P. and Susan M. Nellis, the debtors herein, having previously filed their joint petition commencing a Chapter 7 case on February 27, 1981, filed a complaint requesting that the court avoid the fixing of certain liens upon their jointly-owned residence at 17 Grove Road, Meriden, Connecticut (residence), pursuant to 11 U.S.C. § 522(f).[1] The complaint also seeks to avoid one of the liens as preferential under 11 U.S.C. § 547. Named as defendants in the complaint are Gilbert L. Rosenbaum, trustee, City Savings Bank of Meriden (City Savings), Middlesex Schools Federal Credit Union (MSFCU), and Connecticut Bank and Trust Company (CBT). The debtors allege that after the outstanding balance of a first mortgage held by City Savings and certain taxes due the City of Meriden are deducted from the "liquidated" value of the residence, the resulting equity is entirely exempt, and an attachment lien of MSFCU dated January 23, 1981 and a judgment lien of CBT dated June 19, 1980 impair the debtors' exemption and should be avoided. The complaint further states that the MSFCU lien is preferential as having been obtained within 90 days of the debtors' petition. At trial, the debtors offered the testimony of an experienced appraiser that the residence had a fair market value of $55,000, that 6% is the customary charge of a realtor for selling a residence, and that if a "liquidation" value is to be used, $51,700.00 is that value ($55,000 ± 6% × 55,000 or 3,300 = $51,700). No other valuation testimony was received. It is not contested that the residence is subject to the following encumbrances or that the CBT and MSFCU encumbrances are judicial liens.

| | |
|---|---|
| First Mortgage to City Savings | $37,298.00 |
| City of Meriden, Sewer and Water Taxes | $ 275.00 |
| Judgment Lien of CBT | $ 2,926.48 |

1. *11 U.S.C. § 522*
   (f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
   (1) a judicial lien; . . . .

```
Attachment of MSFCU (As to Gerald Nellis'
                     property interest only,
                     according to the joint
                     petition)                    $ 2,000.00
```

The issue to be resolved is the method of valuation of the residence. The debtors claim that the proper value for the court to consider in determining whether to avoid judicial liens under § 522(f) is a liquidation value. MSFCU and CBT point out that § 522 contains its own list of definitions and § 522(a)(2) defines "value" to mean "fair market value as of the date of the filing of the petition". If the debtors are correct, the liquidation value of $51,700.00 when reduced by the amounts of the first mortgage and city taxes ($37,573.00), results in equity of $14,127.00, all of which is subject to their combined exemptions under § 522(d)(1) and (5) of $15,700.00, and nothing remains to which the MSFCU and CBT liens may attach without impairing said exemptions. If the lienors are correct, and the fair market value of $55,000 is employed, $17,427.00 remains after deduction for the mortgage and taxes resulting in an excess of $1,727.00 above the debtors' claimed total exemptions, to which judicial liens can attach without impairing the debtors' exemptions.

The debtors rely upon a decision of the bankruptcy court in the District of Columbia, *In re Walsh*, 5 B.R. 239, 6 B.C.D. 793 (1980), to support their claim that for the purposes of § 522(f), fair market value is the equivalent of liquidation value in a case seeking relief under Chapter 7. *Walsh* holds that:

> Inasmuch as the purpose of valuation under the exemption provisions is ultimately to determine whether such property is subject to liquidation by the trustee because it is in excess of specified monetary amounts, the Court believes that the term "fair market value", as it is used to define "value" in Section 522, must be interpreted in the liquidation context in a Chapter 7 case.

Therefore, the Court finds that, in the instant case, "fair market value", as the term is used in Section 522, is equivalent to liquidation value. *Id.* at 241.

Although the debtors urge this court to follow *Walsh* and make value equal liquidation value when evaluating real property under § 522(f), I cannot accept that argument in view of the clear expression of Congress in enacting a specific statutory definition of value as fair market value.[2] While there is scant legislative history as to § 522(a)(2), the House and Senate Reports do contain comments which indicate that Congress was well aware of the troublesome issue of determining values of property at various stages of a debtor's case. *See* H.R. Rep. No. 595, 95th Cong. 1st Sess. 339 (1977), U.S. Code Cong. & Admin. News 1978, p. 5787, for the commentary concerning value in adequate protection matters under § 361. In § 101(26) of the Bankruptcy Code, Congress, in defining "insolvent" uses the phrase "at a fair evaluation" to determine the amount of an entity's property. 2 *Collier on Bankrutpcy* (15th ed.) ¶ 101.26[4] in discussing "fair valuation" claims that such valuation is not arrived at "by reliance upon the sum which would be realized at a foreclosure, execution or receivership sale . . . nor . . . the price which the debtor could obtain if he were forced to *instantly* dispose of the assets in question", (emphasis in original at 101–55). Fair valuation is "what can be realized out of the assets within a reasonable time either through collection or sale at the regular market value, conceiving the latter as the amount which could be obtained for the property in question within such period by a 'capable and diligent businessman' from an interested buyer 'who is willing to purchase under the ordinary selling conditions'". *Id.* at p. 101–57.

---

2. This proceeding differs from *Walsh* in that the trustee here has no interest in the outcome under either theory of valuation. The lienors in this proceeding may or may not be involved in an action to liquidate the property.

The governing authority for this district with respect to valuation questions is *Hunter Press, Inc. v. Connecticut Bank and Trust Company*, 420 F.Supp. 338 (1976). In *Hunter Press*, the court, Blumenfeld, J., held that for the purposes of construing the term "fair valuation" as established in § 1(19) of the Bankruptcy Act of 1898 "one should not take into account the auction costs of selling property", *Id.* at 341, and that "[t]he expenses relating solely to the sale of the asset ought not to be subtracted from the market price in determining its fair valuation under the bankruptcy laws." *Id.* at 343. Even though *Hunter Press* is a pre-code decision, I believe it remains applicable to this proceeding. Further, in *Hunter Press*, the court was dealing with *actual* costs of sale which it refused to allow the bankruptcy court to deduct from the fair value of the sold assets. In this proceeding we are talking about potential or possible costs, not actual costs. In fact, these costs are not intended to be incurred at all were the court to sustain the debtors' position.

I can find no basis either in precedent, legislative history or logic to allow the debtors' theory of valuation to prevail. I therefore conclude that in determining value in a § 522(f) proceeding, fair market value is to be determined and such determination is not thereafter to be reduced by any expenses or costs which might be incurred in a sale of such assets. Accordingly, the lien of CBT may be avoided only to the extent by which it exceeds $1,727.00. The lien of MSFCU is avoided both under § 522(f) and under § 547 as a preferential transfer.