**In re David H. CLENDENNEN and Colleen K. Clendennen, Debtors.**

**David H. CLENDENNEN and Colleen K. Clendennen, Plaintiffs,**

v.

**EQUIBANK, Defendant.**

**Bankruptcy No. 86–1100.**

**Motion No. 86–4380.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Dec. 15, 1986.

Donald L. Phillips, Phillips and Galanter, P.C., Pittsburgh, Pa., for debtors/plaintiffs.

Norman E. Gilkey, Kincaid & McGrath, P.C., Pittsburgh, Pa., for defendant Equibank.

Robert G. Sable, Lampl, Sable, Makoroff & Libenson, Pittsburgh, Pa., Trustee.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Presently before this Court is the Debtors' Motion To Avoid Liens held by the

Defendant, Equibank. The parties have stipulated to the fair market value of the Debtors' residence. The issue to be determined is whether the anticipated costs associated with the sale of a residence, including a broker's commission and transfer taxes, must be deducted from the fair market value, prior to calculating the amount available for the Debtors' claimed exemptions and any judicial liens.

Based upon the oral arguments, submitted briefs, and our further research, we find that a reduction in the fair market calculation for the cost of transfer taxes and a broker's commission may not be included in the fair market value determination.

## FACTS

The Debtors own a residence located at 255 Challen Drive, Pittsburgh, Pennsylvania 15236. The property is subject to the following encumbrances, in the following amounts, as of the date of the filing of this bankruptcy petition:

| | | |
|---|---|---:|
| 1) | 1st Mortgage in favor of Equibank | $ 53,605.12 |
| 2) | 2nd Mortgage in favor of Equibank | 9,523.86 |
| 3) | Judgment Lien in favor of Equibank | 8,317.36 |
| 4) | Judgment Lien in favor of Equibank | 20,184.97 |
| | | $ 91,631.31 |

The parties have agreed that the fair market value of this residence was $84,000.00 as of the filing of the bankruptcy petition. The parties also agree that the 1st and 2nd mortgages, totaling $63,128.98, are not avoidable, and that the Debtors may claim an exemption of $15,800.00 pursuant to §§ 522(d)(1) and 522(d)(5) of the Bankruptcy Code.

The Debtors suggest that the fair market value of the residence should be reduced from $84,000.00 to a "net fair market value" of approximately $79,000.00. They arrive at this figure by reducing the fair market value to allow for the costs of sale of the house, *inter alia*, a transfer of one percent (1%) and a broker's commission

of six percent (6%). If this figure is adopted, the total amount available to Equibank on its judicial liens would be $71.02:

| | |
|---|---:|
| Net Fair Market Value | $ 79,000.00 |
| Less Nonavoidable Mortgages | 63,128.98 |
| | $ 15,871.02 |
| Less Debtors' Exemptions | 15,800.00 |
| Amount Remaining For Liens | $ 71.02 |

Equibank asserts that the Code makes no provision for said expenses of sale, and that these amounts should not be considered in determining the extent to which a lien is avoided.

If the original, agreed to, fair market value of $84,000.00 is employed, Equibank would retain its lien to the extent of $ 5,071.02:

| | |
|---|---:|
| Fair Market Value | $ 84,000.00 |
| Less Nonavoidable Mortgages | 63,128.98 |
| | $ 20,871.02 |
| Less Debtors' Exemptions | 15,800.00 |
| Amount Remaining For Liens | $ 5,071.02 |

## ANALYSIS

The Bankruptcy Court for this district has previously had the opportunity to speak to this issue. *In re Shuttleworth,* 12 B.R. 27 (Bankr.W.D.Pa.1981). In *Shuttleworth,* the Debtors argued that the fair market value should be reduced to a figure representing the "net realizable value" by "deducting the transfer taxes and sales commission from the ... market value". *Id.* at 28.

In the *Shuttleworth* Opinion, Judge Cosetti spoke to the issues of transfer taxes and sales commissions as follows:

> *If an actual sale occurs,* payment of transfer taxes would be certain. Transfer fees are allowed, however a brokerage fee is not a certainty. It would be possible for a moving party-seller to sell without a broker. *When an actual sale occurs, an exemption could be lost if the actual price will not support it. So it is with a lienholder, should the price not support the lien.* To avoid a lien based on costs associated with a broker

is to modify the meaning of market value.

*Id.* at 29 (emphasis added).

It is of specific importance and should be noted, that in *Shuttleworth,* the Court *did not* reduce the fair market value to allow for either the sales commission *or* the transfer fees. The Court merely stated:

An expert may utilize this consideration [transfer tax] in determining fair market value.

*Id.* at 29 (brackets added).

Thereafter, the Court employed the figure offered in the appraiser's testimony to determine the extent to which the liens remained in effect.

It also appears that the Court's decision to permit the inclusion of the transfer tax in the appraiser's determination of a fair market value was based, in substantial part, on the fact that the debtors had listed the property for sale, thereby almost assuredly requiring that the above-mentioned transfer taxes be paid. In the case at bar, the Debtors have not listed the property for sale. Further, it appears that the Debtors presently intend to keep their residence, quite possibly based upon the almost complete avoidance of the judicial liens. If in fact the residence is not to be sold, then even the transfer tax loses its color of certainty. Therefore, neither the transfer tax, nor the estimated broker's commission should be included in the determination of fair market value.

Having so stated, we find that Equibank's lien for $ 20,184.97 is completely avoided, and its lien for $8,317.36 is avoided to the extent that it exceeds the amount of $ 5,071.02, which amount does not impair the Debtors exemptions.

An appropriate Order will be issued.