In re Ann M. WINDFELDER, Debtor.

Ann M. WINDFELDER and Edward Sparkman, Trustee, Plaintiffs,

v.

Robert G. ROSEN, Esquire, Defendant.

Bankruptcy No. 86–04929F.
Adv. No. 87–0399F.

United States Bankruptcy Court,
E.D. Pennsylvania.

Feb. 8, 1988.

---

Michael A. Cibik, Philadelphia, Pa., for debtor/plaintiff, Ann M. Windfelder.

Edward Sparkman, Philadelphia, Pa., plaintiff/trustee.

Robert G. Rosen, Lansdale, Pa., pro se.

## OPINION

BRUCE I. FOX, Bankruptcy Judge:

Before me are various motions, objections and an adversary proceeding filed by both the debtor, Ann Windfelder, and a creditor, Robert Rosen, Esquire.[1] Mr. Rosen is former counsel to the debtor and he filed a secured proof of claim in the amount of $17,120.00. The basis for this secured claim is a judgment note in the amount of

---

1. This opinion shall constitute the findings of fact and conclusions of law required by Bankr. Rules 7052 and 9014.

$16,000.00 which was confessed in 1985. The debtor filed an objection to this secured claim alleging that Rosen's claim was for unpaid attorneys fees connected to her divorce proceedings and that the claim was "unreasonable and excessive." The debtor also objected to Rosen's claim being classified as secured, and challenged the creditor's addition of postjudgment (albeit prepetition) interest which raised the total claim from $16,000.00 to $17,120.00. Debtor's objection requested that Rosen's claim be allowed only as unsecured and in the amount of $17,120.00.[2]

In addition to her objection, the debtor filed a motion to avoid Rosen's judgment lien, pursuant to 11 U.S.C. § 522(f)(1). Based upon her belief that her home had a value of $71,500.00, debtor averred that Rosen's judicial lien impaired her exemption, claimed under 11 U.S.C. § 522(b)(1) and (d), and that the lien must be avoided in toto.

Finally, the debtor also initiated an adversary proceeding under 11 U.S.C. § 506(a) seeking to determine the secured status of this creditor's claim. The allegations in this complaint are strikingly similar to the allegations in the motion to avoid the judicial lien and the basis for the relief sought also seems similar.

Rosen filed responses to these various pleadings, along with an objection to the debtor's chapter 13 plan. The stated basis of Rosen's objection is that the debtor has understated the value of her interest in her home. This objection was treated by the parties as an objection to confirmation, a matter also before me.

### I.

Before discussing either the facts underlying these disputes or the relevant legal principles, some procedural simplification is required.

■ The chapter 13 trustee objected to confirmation of the plan as proposed, stating that even if the debtor prevailed in her disputes with Rosen, the proposed plan did not meet the requirements of 11 U.S.C.

§§ 1322 and 1325 and so could not be confirmed. Debtor's counsel agreed that modification to the plan was necessary. In light of my resolution of this dispute, some additional modification may be appropriate. Therefore, I shall not rule upon confirmation at this time.

At the hearing held on debtor's objection to Rosen's proof of claim, the debtor withdrew her challenge to the amount claimed by Rosen. Her objection was preserved only as to the classification of the claim as secured. Because debtor's objection to the secured status of Rosen's claim is predicated entirely upon her attempt to avoid the lien under § 522(f)(1), this objection is now subsumed by her motion to avoid the judicial lien.

■ Similarly, debtor's adversary proceeding is subsumed by her motion to avoid the lien. To the extent that the debtor believes that she may assert her rights under § 522(f)(1) either by motion or adversary proceeding (or both) she overlooks the 1983 passage of Bankr.Rule 4003(d). This procedural rule requires that cases under § 522(f) be heard, on motion, as contested matters. *See In re McKay,* 732 F.2d 44 (3d Cir.1984).

Of course, 11 U.S.C. § 506 does not concern itself with the impairment of debtor's exemption. Rather, section 506(a) is premised upon the congressionally accepted notion that a creditor cannot possess a secured claim for an amount larger than its interest in the collateral. *In re Tanner,* 14 B.R. 933 (Bankr.W.D.Pa.1981). *See* H.R. Rep. 595, 95th Cong. 1st Sess. 356–357 U.S.Code Cong. & Admin.News 1978, p. 5787. Section 506(a), (d) allows a party in interest to bifurcate a claim into secured and unsecured components where the amount of the creditor's claim exceeds the value of the collateral securing the lien. *See In Simonson,* 758 F.2d 103, 111 n. 6 (3d Cir.1985) (Becker, J. dissenting); *In re Everett,* 48 B.R. 618 (Bankr.E.D.Pa.1985).

■ The better procedural practice is to utilize the provisions of Bankr.Rule 3012 to implement the substantive rights created

---

**2.** This requested relief undercuts debtor's assertion that the fee was excessive.

by § 506(a) by filing a motion to value the collateral. *See* Advisory Committee Note to Bankr.Rule 3012. Upon valuation, a complaint under § 506(a), (d) could then be brought. However, some courts have expressed a preference for merging the valuation and bifurcation processes into one proceeding, which could be initiated by complaint. *See In re Jablonski,* 70 B.R. 381, 385 (Bankr.E.D.Pa.1987); *In re Belco, Inc.,* 38 B.R. 525, 528 (Bankr.W.D.Okla. 1984). As the creditor has not opposed the debtor's use of an adversary proceeding to raise the valuation issue implicit in § 506(a), I view the procedural infirmity, if any, as waived.

I recognize that an adversary proceeding under § 506(a) may be of relevance here, if I conclude that the debtor has no equity due to the total of nonjudicial liens—that is, that the value of the property does not exceed the total amount of nonjudicial liens —for § 522(f)(1) cannot apply in such an instance. *In re Simonson; In re Bickleman,* 71 B.R. 135 (Bankr.E.D.Pa.1987). Here, though, I conclude that the value of the debtor's interest in the collateral exceeds both the total of nonjudicial liens and the total of all liens including judgment liens. That being so, bifurcation under § 506(a) is not possible and judgment for defendant Rosen in the adversary proceeding will be entered.

## II.

The heart of this dispute is the debtor's motion to avoid the judicial lien held by Mr. Rosen. At the hearing held on this matter, the parties stipulated as follows:

"1. Ann M. and Albert F. Windfelder are legal owners of real property known as 127 Richardson Road, Lansdale, Pennsylvania. The parties were bound by a Decree Nisi of the Court dated April 2nd, 1985, and the parties are subject to that Decree Nisi. Only Ann M. Windfelder is subject to jurisdiction of the Bankruptcy Court pursuant to her voluntary filing of a Chapter 7 Bankruptcy Petition on October 24, 1986.

"2. There is a first mortgage in favor of Meridian Bank on 127 Richardson Road,

Lansdale, Pennsylvania, and the total payout figure is $23,121.41.

"3. There is a second mortgage on the above real property. The mortgagee is Continental Bank. The total payout figure is $32,336.64. The obligation of the Continental Bank debt is subject to the Decree Nisi dated April 2nd, 1985.

"4. Assuming 127 Richardson Road, Lansdale, Pennsylvania was sold at public or private sale, total expenses of sale to include commissions, transfer taxes and expenses would be seven percent (7%) of the gross sale price."

Additionally, without objection, the debtor introduced into evidence a copy of a proof of claim filed on June 15, 1987, by Continental Bank (marked as claim # 7 on the claims docket). This claim, in the amount of $5,495.79, was filed as a secured claim based upon a mortgage instrument dated April 14, 1978. Although the parties had stipulated that Continental Bank held a mortgage lien in the amount of $32,336.44, I note that Continental filed two distinct claims (# 2 and # 7 on the docket) reflecting two different liens. Claim # 2, filed on December 16, 1986, is in the amount of $32,336.64 and makes reference to a decree nisi dated April 12, 1985; (the same reference is made in ¶ 3 of the stipulation of the parties.) Thus, I agree with the debtor that claims # 2 and # 7 represent different liens and both must be considered as having priority over the Rosen lien for purposes of this motion to avoid.

Finally, I heard testimony concerning the value of the debtor's interest in her home. Gerald Snyder, a real estate broker in the Lansdale area was called as an expert by the creditor. Based upon the condition of the home, its location, its size, and the selling price of comparable homes in that area, Mr. Snyder testified that the debtor's home could sell for $99,000.00 as of the date of his inspection: September 4, 1987. This valuation assumed that approximately $10,000.00 would be required for maintenance and repairs.

The debtor's expert appraiser, L. Brian Trachtman,[3] testified that, based upon the size of the home, its condition, the condition of the surrounding land, and its location, the property had a value of $71,000.00, as of March 3, 1987, the date of his inspection.

The only other witness was Mrs. Windfelder, who testified that she could not offer any reasoned opinion as to the value of her home. She did state that, postpetition, in May, 1987, she paid $3,000.00 to have the roof repaired or replaced.

The differences between the opinions offered by the expert appraisers stem largely from at least two factors: the difference in time of their inspections and their difference in judgment about the condition of the land upon which the home sits. Mr. Trachtman used a market approach, as did Mr. Snyder. Both reviewed the sales of comparable homes in the area. The three comparable homes chosen by Mr. Snyder sold for between $95,000.00 and $106,500.00; the three comparable homes chosen by Mr. Trachtman sold for between $95,000.00 and $125,000.00. When Mr. Snyder inspected the property, the roof had been repaired; Mr. Trachtman stated that when he saw the property the roof was in terrible disrepair, and the interior had suffered some damage, all of which affected its market value. Of course, Mrs. Windfelder was subsequently able to have the roof repaired for $3,000.00.

The main dispute between appraisers stems from their assessment of the condition of the back yard. Mr. Tractman thought the ground so wet as to severely reduce the value of the property. Mr. Snyder thought that the wetness of the ground was similar in condition to land surrounding homes in that entire county, including the comparable homes chosen for the market approach. As Mr. Snyder is a real estate broker from that area and Mr.

Trachtman is not, I shall accept Mr. Snyder's assessment of area land conditions as the more accurate. Further supporting his position is his testimony that in November 1987, a vacant lot, located approximately one-half mile from the debtor's home, was sold for $63,500.00. The lot is no larger than the debtor's, and had a stream on the property.

While I recognize that the valuation of real property is less than an exact science, *In re Mikole Developers, Inc.,* 14 B.R. 524, 526 (Bankr.E.D.Pa.1980), I am more persuaded by Mr. Snyder's testimony than that of Mr. Trachtman. Both have adjusted the value to allow for the poor condition of the home.[4] However, I shall discount slightly Mr. Snyder's valuation, which assumed that only $10,000.00 would be needed to repair and maintain the property. After hearing Mr. Trachtman's testimony concerning the condition of the home and surrounding buildings, I believe that the cost of needed repairs is higher than estimated by Mr. Snyder. I conclude that $12,000.00 is more accurate repair cost and that the debtor's residence would thus have brought a purchase price of $97,000.00 as of September 4, 1987.

■ However, for purposes of 11 U.S.C. § 522(f)(1), the valuation of the debtor's interest in property is established as of the date the bankruptcy case commenced. *See In re Chandler,* 77 B.R. 513 (Bankr.E.D. Pa.1987); *In re Rappaport,* 19 B.R. 971, 973 (Bankr.E.D.Pa.1982); *In re Tanner,* 14 B.R. 933, 936–937 (Bankr.W.D.Pa.1981). Not only are creditor claims generally determined as of the date of filing, *see e.g., In re Camp,* 78 B.R. 58 (Bankr.E.D.Pa.1987), but exemption claims are also established as of that date. For the purposes of section § 522, value means: "fair market value *as of the date of the filing of the*

---

**3.** Because debtor's appraiser inadvertently appeared late for the hearing due to transportation problems, the record, upon motion, was reopened for supplemental testimony. *See Skehan v. Board of Trustees of Bloomsburg State College,* 590 F.2d 470 (3rd Cir.1978) *cert. denied* 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1978); *Rochez Brothers, Inc. v. Rhoades,* 527 F.2d 891

(3rd Cir.1975) *cert. denied* 425 U.S. 993, 96 S.Ct. 2205, 48 L.Ed.2d 817 (1976).

**4.** Mr. Trachtman's testimony that the debtor's heating system was not functioning was not corroborated by his appraisal report, *M–2,* and so was not considered. Mr. Snyder, in his report *M–3,* noted that the heating system was fair.

*petition*". 11 U.S.C. § 522(a)(2) (emphasis added).

■ In order to establish the value of the debtor's home as of October 24, 1986, the date her chapter 13 petition was filed, I have accepted Mr. Snyder's testimony that the Lansdale area has seen an annual appreciation in real property values of approximately 15% during the past year. Since Mr. Snyder's opinion on selling price was based upon an inspection in early September 1987, 10 months of appreciation had occurred postpetition which was reflected in Mr. Snyder's valuation and which must be deducted. At an annual rate of 15%, the property in question appreciated 12.5% between late October 1986 and early September 1987. Additionally, a $3,000.00 roof repair was made after the bankruptcy filing but before Mr. Snyder's inspection.[5] Taking into account these deductions to the figure given by Mr. Snyder, I consider the fair market value of the home as of the date on which the debtor's petition was filed to be $83,555.56.[6]

■ The debtor also asks that I deduct hypothetical transaction costs of 7% from the creditor's valuation. She argues that the estate would not realize these costs if the property were liquidated. As stated above however, 11 U.S.C. § 522(a)(2) specifically mandates that fair market value be used for the purposes of any valuation necessary under section 522. The overwhelming weight of the case law which has addressed the definition of fair market value rejects the notion that the appropriate valuation is what the debtor would receive in a hypothetical liquidation and has held instead that value should be measured by the amount the debtor would receive from a reasonable and willing buyer if the debtor were not under compulsion to sell. *In re Rehbein*, 49 B.R. 250 (Bankr.D.Mass.

1985); *In re Frazier*, 33 B.R. 175 (Bankr.D. Md.1983); *In re Henderson*, 33 B.R. 149 (Bankr.D.N.M.1982); *In re Cohen*, 13 B.R. 350 (Bankr.E.D.N.Y.1981); *Matter of Nellis*, 12 B.R. 770 (Bankr.D.Conn.1981). *See also In re Lewis W. Shurtleff, Inc.*, 778 F.2d 1416, 1422 (9th Cir.1985) (dicta); 2 Norton, *Bankruptcy Law and Practice* § 26.12.50 at 247 (1984 cumulative supplement). *But see, In re Walsh*, 5 B.R. 239 (Bankr.D.D.C.1980) (liquidation value appropriate for determining value of exemptions in a chapter 7 case.) Other than *In re Walsh*, I was unable to locate any case valuing property for the purposes of section 522 which deducts transaction costs in the valuation process. In several cases, courts have explicitly refused to deduct them. *In re Anderson*, 68 B.R. 313 (Bankr.W.D.Pa.1986); *In re Clendennen*, 67 B.R. 909 (Bankr.W.D.Pa.1986); *In re Rehbein; In re Shuttleworth*, 12 B.R. 27 (Bankr.W.D.Pa.1981); *Matter of Nellis. But see, In re Siegler*, 5 B.R. 12 (Bankr.D. Minn.1980) (transaction costs deducted in valuation for purposes of redemption pursuant to 11 U.S.C. § 722). Where, as in this chapter 13 proceeding, the debtor is choosing to claim an exemption in property without liquidating, no transaction costs are contemplated. Thus, where the debtor seeks to avoid liens absent liquidation, she is not entitled to deduct transaction costs.[7]

### III.

■ As discussed above, the value of the debtor's residence as of the commencement of the case was $83,555.56. Non avoidable secured liens total $60,953.84. Total equity is thus $22,601.72. *See In re Simonson; In re Magosin*, 75 B.R. 545 (Bankr.E.D.Pa. 1987). The debtor, as of the commencement of her case, held a one-half interest in this property as tenant in common with her ex-husband. Therefore, her interest in the

---

**5.** This deduction comports with the methodology used by Mr. Snyder of subtracting the cost of needed repairs in determining the market value of the real estate.

**6.** The figure is computed as follows: September 1987 sale price of $97,000.00 minus $3,000.00 (cost of postpetition roof repairs), minus 12.5% appreciation.

**7.** This does not preclude any debtor from claiming an exemption in proceeds from the postpetition sale of property. Of course, the amount of proceeds available would be affected by the transaction costs.

equity in the property is reduced to $11,-300.86 representing one-half of the value of the equity. *See In re Chandler,* 76 B.R. 460 (Bankr.E.D.Pa.1987) *In re Crompton,* 68 B.R. 831 (Bankr.E.D.Pa.1987). The debtor has chosen the federal exemptions which entitle her to exempt $7,500.00 of her interest in her residence. Therefore, all but $3,800.86 of Mr. Rosen's judicial lien [8] impairs the debtor's exemption. *See In re Chandler; In re Magosin.*

The result of this analysis is as follows: Mr. Rosen's judicial lien is avoided except in the amount of $3,800.86. Rosen holds a secured claim in the amount of $3,800.86 and an unsecured claim in the amount of $13,319.14 against the debtor's interest in her residence. The debtor's objection to Rosen's proof of claim will be sustained in part. The debtor's adversary proceeding will be dismissed with judgment entered on behalf of defendant Rosen.

Appropriate orders will be entered.

---

[8]. That Mr. Rosen's judgment lien is a judicial lien subject to avoidance if it impairs an exemption is no longer open to question. *Gardner v. Commonwealth of Pennsylvania, Department of Public Welfare,* 685 F.2d 106 (3d Cir.) *cert. denied,* 459 U.S. 1092, 103 S.Ct. 580, 74 L.Ed.2d 939 (1982); *In re Ashe,* 712 F.2d 864 *cert. denied,* 465 U.S. 1024, 104 S.Ct. 1279, 79 L.Ed.2d 683 (1984) (3rd Cir.1983).