**In re Nira and Bhumika SHETH, Debtors.**

**Nira and Bhumika SHETH, Debtors, Plaintiffs,**

v.

**AFFILIATED REALTY & MANAGEMENT CO., Defendant.**

**Bankruptcy No. 97 B 07460.
Adv. No. 97 A 01415.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Oct. 14, 1998.

Jack Mc Cullough, Trustee

## MEMORANDUM OPINION

ERWIN I. KATZ, Bankruptcy Judge.

This matter comes before the Court on the Debtors' Motion for Summary Judgment on their Adversary Complaint. The adversary complaint seeks to avoid the judicial lien of Defendant Affiliated Realty & Management Company pursuant to 11 U.S.C. § 522(f)(1) and (2) on the grounds that it impairs the Debtors' homestead exemption. The motion for summary judgment and supporting memorandum of law allege that the judicial lien should be avoided in its entirety on two alternative grounds. First, the Debtors argue that since there is insufficient equity to pay the judicial lien in full after allowance of the senior liens and the exemption, the judicial lien impairs the Debtors' exemption and must be avoided in its entirety. Second, the Debtors assert that estimated liquidation costs such as broker's commission, real estate taxes, title and recording costs, and legal fees, must be subtracted from the property's value before calculation of the amount of the judicial lien to be avoided.

This Court finds that there is no genuine issue of material fact to preclude the entry of summary judgment. The Debtors are entitled to a judgment avoiding the judicial lien in part. To determine the extent to which the lien will be avoided, the Court makes the following conclusions of law. This Court holds that (1) when there is insufficient equity to pay the judicial lien in full after allowance for senior liens and the Debtors' exemption, the judicial lien should only be partially avoided in the amount of the equity·shortfall, and (2) closing costs such as broker's commissions, title costs, and legal fees should not be deducted when applying 11 U.S.C. § 522(f). Outstanding real estate taxes, however, must be considered in determining the extent of the exemption impairment and lien avoidance since they are secured by a senior statutory lien under Illinois law.

Applying these conclusions of law, the Court holds that the Defendant's judicial lien only partially impairs the Debtors' homestead exemption and it will not be avoided in

Georgette Naghani, for Movant or Plaintiff.

Alan S. Feingold, for Respondent or Defendant.

its entirety. The Debtors are entitled to summary judgment avoiding a portion of the judicial lien, but the calculation set forth in the motion for summary judgment is incorrect.

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b) and 28 U.S.C. § 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (K) since it concerns the administration of the estate and seeks to determine the extent and priority of a lien.

## II. STATEMENT OF UNCONTESTED FACTS

On March 12, 1997, the Debtors, Niru and Bhumika Sheth, filed their voluntary petition under Chapter 13 of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. Prior to the filing of the bankruptcy petition, the Defendant Affiliated Realty & Management Co. (hereinafter "Defendant") perfected its judgment in a Citation to Discover Assets proceeding against the trustee of the land trust holding title to the Debtors' homestead at 516 Andy Drive, Melrose Park, IL 60160.[1] The Debtors filed an adversary complaint and an amended complaint seeking to avoid the Defendant's judicial lien pursuant to 11 U.S.C. § 522(f)(1) and (f)(2). The Defendant timely answered the amended complaint. The Debtors then filed the instant Motion for Summary Judgment. The Defendant filed an amended response to the motion which objects to the entry of summary judgment on the ground that total avoidance of its lien is improper. The Defendant does not oppose the entry of a summary judgment avoiding its lien to the extent it actually impairs the Debtors' exemption under 11 U.S.C. § 522(f).

For purposes of the summary judgment motion, the parties have stipulated that (1) the market value of the homestead property at Andy Drive, Melrose Park, IL, is $150,000; (2) the joint Debtors are entitled to a homestead exemption in the total amount of $15,000 under Illinois law; (3) the property is subject to a first priority mortgage in the amount of $85,271; (4) the property is subject to a second priority mortgage in the amount of $36,900; and (4) the Defendant has a valid judgment lien on the property which is subordinate to the existing mortgages.

The actual amount of the judicial lien is unclear from the pleadings, but it is at least $15,956 and the Defendant has consented to the use of this number for the purpose of resolving the legal issues presented in the adversary complaint.[2]

In addition to the stipulated facts, the Debtors have submitted an affidavit from Debtor Niru Sheth which sets forth the estimated closing costs the Debtors believe they would incur upon a sale of their homestead for $150,000. These costs consist of $2,728 in real estate taxes; $9,000 in real estate commission; $787 in title and recording costs; and $750 in legal fees. The affidavit attaches a tax bill, a broker's statement and a title company invoice to support these numbers. The Defendant has not submitted any evidence contradicting these estimated closing costs in its response to the motion for summary judgment.

There are two issues presented by the motion for summary judgment and the underlying adversary complaint. First, whether the judicial lien will be avoided in its entirety or only avoided in part when it only partially impairs the Debtors' exemption.[3]

---

1. This Court previously upheld the validity of the citation to discover assets and found that the Defendant's lien was properly perfected. See Memorandum Opinion Dated August 22, 1997 and Order Dated September 22, 1997.

2. The original judgment was for $15,255.32. The Defendant filed a secured proof of claim for $16,432.45, which it claims is the amount of the original judgment plus costs and charges. It is not clear from the record how the parties arrived at $15,956 for the amount of the lien. While the correct amount of the lien will affect the mathe-

matical calculations of the lien avoidance, it will not affect the rule of law decided herein by this Court. This remaining factual issue, therefore, does not preclude the entry of summary judgment.

3. The Debtor's motion for summary judgment and supporting memorandum request that the judicial lien be avoided in its entirety. The basis for this request appears to be the partial impairment of the Debtors' homestead exemption. It is not entirely clear whether this is a separate legal theory or simply the conclusion reached when

Second, whether the value of the property should be reduced for estimated closing costs and real estate taxes when calculating the amount of the lien avoidance using the formula in § 522(f)(2).

## III. DISCUSSION

### A. Standards for Summary Judgment

The purpose of summary judgment under Federal Rule of Civil Procedure 56 (adopted by Federal Rule of Bankruptcy Procedure 7056), is to avoid unnecessary trials when there is no genuine issue of material fact in dispute. *Farries v. Stanadyne/Chicago Division*, 832 F.2d 374, 378 (7th Cir.1987); *Wainwright Bank & Trust Co. v. Railroadmens Fed. Sav. & Loan Assoc. of Indianapolis*, 806 F.2d 146, 149 (7th Cir.1986). Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Matsushita Elect. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Trautvetter v. Quick*, 916 F.2d 1140, 1147 (7th Cir.1990).

The burden is on the moving party to show that there is no such factual dispute. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552; *Matsushita*, 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *In re Chicago, Missouri & Western Ry. Co.*, 156 B.R. 567 (Bankr.N.D.Ill.1993). This burden is met when the record, as a whole, does not lead a rational trier of fact to find for the non-moving party. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250, 106 S.Ct. at 2510–11 (citations omitted).

Applying these standards to the instant motion, the Court finds that summary judgment is appropriate and that the Debtors are

using the liquidation value of the property in the § 522(f)(2) formula. Despite this lack of clarity, the Court will treat the issue as having been

entitled to have some portion of the Defendant's lien avoided under their adversary complaint to the extent it impairs their homestead exemption. The precise amount of such avoidance, however, must be calculated and a separate judgment order entered in accordance with the following opinion.

### B. Debtors' Avoidance Rights Under 11 U.S.C. § 522(f)(1) and (2)

Section 522(f)(1) of the Bankruptcy Code states in relevant part that:

"[T]he debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—(A) a judicial lien, other than a judicial lien that secures a debt—[for alimony, maintenance, and support];"

Subsection 2 goes on to provide a mathematical formula for determining impairment as follows:

"(2)(A) For purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—(i) the lien; (ii) all other liens on the property; and (iii) the amount of the exemption that the debtor could claim if there were no liens on the property; exceeds the value that the debtor's interest in the property would have in the absence of any liens."

Under these provisions, the debtor may avoid a judicial lien to the extent that it impairs an exemption to which the debtor would otherwise be entitled.

The controversy in the instant case focuses on the proper application of the formula in subsection (2)(A). It would appear on its face to be a relatively simple calculation of value minus the sum of other liens, the exemption, and the judicial lien to be avoided. In the event this formula produces a negative number, the judicial lien must be avoided in that amount since this is the extent to which the exemption is impaired. When the amount of the liens and the amount of the

properly raised in an effort to finally resolve the parties' rights in this proceeding.

applicable exemption are known, the only variable or question of fact should be the appropriate value to be used in making the calculation. Unfortunately, litigants and the courts have managed to thoroughly complicate the application of this formula.

### 1. Whether the judicial lien will be avoided in its entirety or only avoided in part when it only partially impairs the Debtors' exemption.

■ Section 522(f)(1) and (2) provide that a judicial lien shall be considered to impair an exemption and shall be avoided "to the extent that the sum of the lien, all other liens on the property, and the amount of the exemption that the debtor could claim if there were no liens on the property, exceeds the value that the debtor's interest in the property would have in the absence of any liens." To interpret and apply this provision, the Court must look to the plain meaning of the statutory language. *United States v. Ron Pair,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989).

■ The plain language of these provisions, stating that the judicial lien shall be avoided to the extent of any impairment, allows for partial avoidance when there is only partial impairment. The phrase "to the extent that" appears in both subsections and it sets forth both the condition for avoidance (to the extent there is an impairment) and the amount to be avoided (the extent of such impairment). This Court does not read this language to mean that whenever there is any impairment, the judicial lien must be avoided in its entirety as an all or nothing rule. Such a reading negates the inclusion of the phrase "to the extent that" in subsection (2)(A) stating that an impairment exists to the extent that value is less than the sum of all liens plus the exemption. This Court, therefore, holds that the plain language requires partial avoidance of a judicial lien to the extent there is only a partial impairment of the exemption. The majority of the courts considering this issue have reached the same result. *See, e.g., In re Finn,* 211 B.R. 780 (1st Cir. BAP 1997); *In re Silveira,* 141 F.3d 34 (1st Cir.1998); *In re Ryan,* 210 B.R. 7 (Bankr.D.Mass.1997); *In re Corson,* 206 B.R.

17 (Bankr.D.Conn.1997); *In re Todd,* 194 B.R. 893 (Bankr.D.Mont.1996); *In re Moe,* 199 B.R. 737 (Bankr.D.Mass.1995); *In re Johnson,* 184 B.R. 141 (Bankr.D.Wyo.1995); *In re Thomsen,* 181 B.R. 1013 (Bankr. M.D.Ga.1995).

Although this Court need not look beyond the plain meaning of the statutory language, it notes that § 522(f)(2)(A) was added to the Bankruptcy Code as part of the Bankruptcy Reform Act of 1994 for the express purpose of clarifying when an exemption is impaired and to what extent the lien should be avoided under § 522(f)(1)(A).

> "Because the Bankruptcy Code does not currently define the meaning of the words impair an exemption in section 522(f), several court decisions have, in recent years, reached results that were not intended by Congress when it drafted the Code. This amendment would provide a simple arithmetic test to determine whether a lien impairs an exemption, based upon a decision, *In re Brantz,* 106 B.R. 62 (Bankr. E.D.Pa.1989) that was favorably cited by the Supreme Court in *Owen v. Owen,* 500 U.S. 305, 313 n. 5, 111 S.Ct. 1833, 1838 n. 5, 114 L.Ed.2d 350 (1991)."

H.R.Rep. No. 835, 103rd Cong.2d Sess. 52 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3361.

While the House Report does not specifically discuss lien avoidance in the context of a partial equity situation like that presented in the instant case, it does state that the formula in subsection (2)(A) is based upon the holding of *In re Brantz,* 106 B.R. 62 (Bankr.E.D.Pa.1989). The formula set forth in *Brantz* expressly allows for partial avoidance in the event there is some equity after payment of senior liens and the exemption. 106 B.R. at 68. Thus, to the extent it must look to legislative history, the Court finds support for the conclusion that a judicial lien shall only be partially avoided when there is some equity available after the payment of senior liens and the exemption.

Numerous courts have considered the issue of partial lien avoidance under § 522(f)(2) and most have concluded that consideration of the legislative history provides little guidance in this regard. *See, e.g. In re Silveira,* 141 F.3d 34 (1st Cir.1998); *In re Ryan,* 210

B.R. 7 (Bankr.D.Mass.1997); *In re Moe,* 199 B.R. 737 (Bankr.D.Mont.1995). The confusion arises because the cases cited in the House Report as examples of the problem the drafters intended to address do not actually contain the fact pattern ascribed to them in the Report.[4] These courts, therefore, have concluded the legislative history underlying § 522(f)(2) does not demonstrate a congressional intent to preclude partial lien avoidance when there is some equity remaining after senior liens and applicable exemptions.

This Court concludes that the plain meaning of the statutory language, as well as the reference to the *Brantz* formula in the legislative history, allow for partial avoidance of a judicial lien to the extent that the lien only partially impairs the debtor's exemption. Therefore, it holds that when the property's value, minus the sum of (i) other liens, (ii) the exemption and (iii) the judicial lien, produces a negative number, this is the extent to which the lien should be avoided. This is the extent to which the exemption is impaired. It may be more or less than the face amount of the judicial lien and may result in a full or a partial avoidance of that lien.

Applying this holding to the instant case, the Court calculates the lien avoidance as follows:

| | | |
|---|---:|---:|
| Stipulated Fair Market Value | | $150,000 |
| Less Sum Of - | | |
| Senior Liens: | | |
| First Lien | 85,271 | |
| Second Lien | 36,900 | |
| Tax Liens | 2,728 | |
| Exemption | 15,000 | |
| Judicial Lien | 15,956 | |
| | | 155,855 |
| EXTENT OF IMPAIRMENT AND AMOUNT OF AVOIDANCE | | $ (5,855) |

This example illustrates the manner in which the calculation should be made. It may be necessary for the parties to adjust this calculation in drafting the summary judgment order to account for the correct amount of the judicial lien, *see* Footnote 2, *supra.*

### 2. Whether the value of the property should be reduced for estimated liquidation costs and outstanding real estate taxes prior to calculating the amount of the lien avoidance using the formula in § 522(f)(2).

■ Alternatively, the Debtors argue that the judicial lien must be avoided in its entirety because there is no equity left after deducting estimated liquidation costs and outstanding real estate taxes from the property's value. The Debtors seek to reduce the stipulated fair market value of the property by the amount of estimated closing costs and taxes before subtracting the senior liens, exemption, and judicial lien. If this "liquidation value" is used in applying the avoidance formula, then the extent of the exemption impairment is greater than the face amount of the judicial lien and it would be entirely avoided.

The Court rejects this argument and holds that fair market value is the appropriate valuation standard as set forth in § 522(a)(2) and liquidation costs and closing costs are not to be deducted from this market value. The Debtors do not cite any authority for the deduction of liquidation costs.[5] This Court's research reveals an established rule of law that liquidation costs are not deducted from

---

**4.** *See In re Gonzalez,* 149 B.R. 9 (Bankr.D.Mass. 1993), *vacated on appeal,* 191 B.R. 2 (D.Mass. 1996); and *In re Chabot,* 992 F.2d 891 (9th Cir.1993). The House Report states that *Gonzalez* and *Chabot* wrongly refused to avoid a judicial lien when there was no equity after payment of the senior lien or when there was no equity after payment of the senior lien and the exemption. These cases, however, actually dealt with the situation where there was some equity after payment of senior liens and the exemption. *See Gonzalez,* 149 B.R. at 10–11; *Chabot,* 992 F.2d at 894–95. Based upon this partial equity, the judicial lien was only partially avoided in *Gonzalez* and *Chabot.* The House Report mischaracterizes the facts and the holdings of these cases when it

says they failed to avoid the judicial lien in a no equity situation. Based upon these apparent errors and inconsistencies, the majority of the courts who have looked at the legislative history underlying the 1994 amendments have concluded that it does not definitively resolve the issue of partial lien avoidance. *See In re Silveira,* 141 F.3d 34 (1st Cir.1998); *In re Ryan,* 210 B.R. 7 (Bankr.D.Mass.1997); *In re Moe,* 199 B.R. 737 (Bankr.D.Mass.1995).

**5.** The *Allard* decision referred to by the Debtors addresses the "best interest of creditors" requirement for confirmation under § 1325, also commonly known as a "liquidation analysis." This decision is not on point and provides no authori-

market value when applying § 522(f)(2). *See, e.g., In re Sumerell,* 194 B.R. 818, 827 (Bankr.E.D.Tenn.1996); *In re Abrahimza-deh,* 162 B.R. 676, 678 (Bankr.N.J.1994); *In re Yackel,* 114 B.R. 349, 351 (Bankr.N.D.N.Y. 1990); *In re Windfelder,* 82 B.R. 367, 372 (Bankr.E.D.Pa.1988); *In re Shuttleworth,* 12 B.R. 27, 29 (Bankr.E.D.Pa.1981). *See also Household Finance Corp. III v. Wilk,* 1992 WL 165770 (W.D.N.Y.)(*unpublished opinion*); 2 Norton Bankruptcy Law & Practice 2d § 46:7 at (Supp.1998); and statements made in *dicta* in *In re Johnson,* 184 B.R. 141, 146–47 (Bankr.D.Wyo.1995) and *In re Clark,* 217 B.R. 177, 181 (Bankr.E.D.Va.1998).

The only case to the contrary that the Court could locate is *In re Walsh,* 5 B.R. 239 (Bankr.D.C.1980). In that opinion, the Bankruptcy Court held that liquidation value was the correct valuation standard under § 522. Subsequent to that decision, however, no other court has adopted this approach. The only cases allowing liquidation costs before calculation of the lien avoidance that this Court uncovered were instances where the Debtors actually sold the property and actually incurred such costs. *See, e.g., In re Bernstein,* 62 B.R. 545 (Bankr.D.Vt.1986); *In re Kurszewski,* 41 B.R. 604 (Bankr.W.D.Wis. 1984); *In re Guilmette,* 12 B.R. 799 (Bankr. D.R.I.1981).

This Court adopts the majority position and holds that estimated liquidation costs such as broker commissions, title costs and recording costs should not be deducted from the fair market value of the property when calculating the extent of the impairment and of the lien avoidance under § 522(f)(1) and (2). Only prior consensual liens and other non-avoidable senior liens are deducted from value prior to the deduction of the judicial lien in applying the avoidance formula.

■ The Debtors also assert that there should be an allowance for outstanding real estate taxes in determining the amount of the lien avoidance.[6] The Debtors' affidavit attaches the 1996 tax bill for the homestead property which shows the second installment of the 1996 taxes to be outstanding in the amount of $1,173.15. The Debtors' affidavit states that the outstanding taxes are $1,364 for the second installment of 1996 taxes and $1,364 for the first installment of 1997 taxes, for total outstanding pre-petition real estate taxes of $2,728. While such taxes do not represent a consensual lien, they are clearly secured and accorded first priority under Illinois law. The Illinois Property Tax Code provides that:

> [t]he taxes upon property, together with all penalties, interests and costs that may accrue thereon, shall be a prior and first lien on the property, superior to all other liens and encumbrances, from and including the first day of January in the year in which the taxes are levied until the taxes are paid or the property is sold under this Code.

35 ILCS 200/21–75.

The taxes secured by such a lien are assessed and levied on a calendar year basis, but are not billed until the following calendar year. 35 ILCS 200/1–155; 35 ILCS 200/21–30. The taxes are actually payable in two installments during the following calendar year. 35 ILCS 200/20–210. For example, 1996 taxes would be assessed and levied in 1996, but would not become due and payable until the two installments dates in 1997. Under these provisions, even though the amount is unknown, undetermined and not yet payable, real estate taxes become a lien on the property as of January 1 of the year in which the taxes are levied. *In re Handy Andy Home Improvement Centers, Inc.,* 196 B.R. 87, 90 (Bankr.N.D.Ill.1996), *aff'd* 222 B.R. 149 (N.D.Ill.1997), *aff'd* 144 F.3d 1125 (7th Cir.1998).

■ In the instant case, tax obligations arose and became secured by the property

---

ty for the position taken by the Debtors in this matter. *In re Allard,* 196 B.R. 402 (Bankr. N.D.Ill.1996)(Squires, J.), *aff'd* 202 B.R. 938 (N.D.Ill.1996).

**6.** The Debtors incorrectly include the tax liens in their request for the allowance of liquidation costs. The Court notes that estimated sales tax or other liquidation type transfer taxes would not be allowed under § 522(f)(2). 2 Norton Bankruptcy Law & Practice 2d § 46:7 (Supp.1998). Real estate taxes under Illinois law, however, represent senior lien claims which are clearly distinguishable from estimated liquidation or transfer taxes. *See* 35 ILCS 200/21–75.

on January 1, 1996 and January 1, 1997. These tax liens have a first priority over any subsequent liens as well as pre-existing consensual and judicial liens under Illinois law. 35 ILCS 200/21–75; *Pappmeier v. Green Tree Acceptance, Inc.*, 193 Ill.App.3d 824, 140 Ill.Dec. 689, 550 N.E.2d 574 (1990); *Forman Realty Corp. v. Brenza*, 144 N.E.2d 623, 11 Ill.2d 531 (1957); *Jader v. Costello*, 405 Ill. 181, 89 N.E.2d 814 (1950). The Defendant perfected its judicial lien on February 11, 1997. The Debtors filed their Chapter 13 petition on March 12, 1997. Any outstanding tax liens for the 1996 and 1997 tax obligations would therefore constitute senior liens under Illinois law which would have priority over Defendant's judicial lien and must be included in the lien avoidance calculation under § 522(f)(2). *See also In re Moe*, 199 B.R. 737 (Bankr.D.Mont.1995) and *Household Finance Corp. III v. Wilk*, 1992 WL 165770 (W.D.N.Y.) *(unpublished opinion )* deducting delinquent taxes in the avoidance calculation.

## IV. CONCLUSION

The Debtor shall submit a judgment order in accordance with this opinion which sets forth the precise amount of the judicial lien to be avoided using the formula set forth in herein at the status call on *November 19, 1998, at 10:30 a.m.*