In re Robert A. THOMSEN, Sheila
M. Thomsen, Debtors.

Bankruptcy No. 94–53318.

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

May 16, 1995.

Richard M. Katz, Macon, GA, for debtors.

Martin L. Fierman, Eatonton, GA, for respondent.

J. Coleman Tidwell, Chapter 7 Trustee, Macon, Ga.

## MEMORANDUM OPINION

JAMES D. WALKER, Jr., Bankruptcy Judge.

This matter comes before the Court on Motion to Determine the Value of Security and Motion to Avoid Judicial Lien filed by Robert and Sheila Thomsen ("Debtors"). This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(K). Based on the evidence presented at the hearing on February 6, 1995, the Court will grant Debtors' motion and avoid this judicial lien.

## FINDINGS OF FACT

Debtors filed this case under Chapter 7 of the Bankruptcy Code on November 17, 1994. A & P Brown, Inc. ("Brown"), is a creditor in this case with a judgment lien in the approximate amount of Sixty Thousand Dollars ($60,000.00). At the hearing, it was stipulated that the value of the subject real property was either (1) less than the amount of the first mortgage or (2) less than the amount of the total of the first mortgage and Debtors' exemption claim of Ten Thousand Eight Hundred Dollars ($10,800.00) under O.C.G.A. § 44–13–100(6).

## CONCLUSIONS OF LAW

Before October 22, 1994, section 522(f) of the Bankruptcy Code provided as follows:[1]

---

1. This version of section 522(f) was in force prior to the recent amendments approved by Congress    and signed into law by the President on October

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien; or

(2) a nonpossessory, nonpurchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

(C) professionally prescribed health aids for the debtor or a dependent of the debtor.

11 U.S.C. § 522(f) (West 1994).

Interpretations of the former section 522(f) of the Bankruptcy Code provide conflicting views regarding a debtor's ability to avoid judicial liens. Two recent Georgia Bankruptcy Court decisions reflect disagreement regarding the application of the language and policy of section 522(f). The operation of the former section 522(f) was summed up by the court in *Hunter v. Dean Witter Financial Services, Inc. (In re Hunter)*, Ch. 7 Case No. 92–41510 (Bankr.S.D.Ga. Oct. 31, 1994) as follows:

[S]ection 522(f)(1) empowers a debtor to "avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is ... a judicial lien." [footnote omitted]. According to the Supreme Court, the first question to ask in applying this provision is "whether avoiding the lien would entitle the debtor to an exemption, and if it would, then avoid and recover the lien...." [citing *Owen v. Owen,* 500 U.S. 305, 312–13, 111 S.Ct. 1833, 1837–38, 114 L.Ed.2d 350

22, 1994. The effect of the recent amendments

(1991) ]. In other words, if the presence of a judicial lien prevents a debtor from being able to take an exemption that he would otherwise be able to claim in its absence, then the lien impairs the debtor's exemption and is subject to avoidance under section 522(f).

*Id.* at 10.

As the court in *Hunter* noted, "the nature and extent of Debtor's entitlement to an exemption in the ... property is purely a question of Georgia law. [footnote omitted]. Once Debtor's exemption is established, the issue of impairment and avoidance becomes a question of federal law." [footnote omitted]. *Id.* at 13.

Courts have disagreed over what constitutes impairment of an exemption as well as whether and to what extent a lien may be avoided when an exemption is impaired by a lien. The principal question raised by the former section 522(f) was stated by the *Hunter* opinion as follows:

Does section 522(f) entitle the Debtor to avoid all of [the creditor's] lien, or only that portion that actually interferes with (ie., is equal to) his ... exemption? Stated another way: Does section 522(f) contemplate a "carve out" of that portion of a lien necessary to accommodate a debtor's exemption and subordination of the remainder of the lien, or does it contemplate complete avoidance of the lien?

*Id.* at 13.

The division of authority was characterized by the court in *Ward v. Federal Deposit Insurance Corp. (In re Ward)*, Ch. 7 Case No. 92–60120 (Bankr.M.D.Ga. Nov. 21, 1994) as follows:

One line of cases holds that the limiting language of § 522(f) of the Code permits avoidance of the judicial lien only in the amount of the debtor's exemption. Such cases hold fast to the "plain language" rule of statutory interpretation—that the plain language of § 522(f) allows the avoidance of the fixing of a lien only "to the extent" that the lien impairs an exemption. [citations omitted]. The effect of this position is that the unavoided portion of the lien

will be discussed below.

survives bankruptcy and attaches to any equity that accumulates above the debtor's exemption. Therefore, the judicial lienholder, rather than the debtor, benefits from any post-petition appreciation in the value of the exempt property and any post-petition built-up equity which would be paid upon the sale of the property....

The other line of cases holds that the entire judicial lien above the amount of debtor's equity in the property must be avoided to enable the debtor to obtain the benefit of his exemption and a "fresh start". [citations omitted]. The effect of this position is that any post-petition appreciation in the value of the property and any post-petition built-up equity which would be paid upon the sale of the property accrues to the benefit of the debtor rather than the judicial lienholder.

*Ward* at 10–16.

The court in *Hunter* concluded that the "carve out" approach was the correct approach, and that "the only part of [the creditor's] lien that must be avoided to preserve the exemption is that portion which consumes the $5,000.00 of equity that would otherwise be available. Once this part of its lien is avoided, the Debtor is able to exempt the full amount available under state law and the inquiry under Section 522(f) should cease." *Id.* at 19. Therefore, the court refused to avoid the entire judicial lien and limited lien avoidance to that portion of the lien which actually impaired the debtor's exemption.

An opposite conclusion was reached by the court in *Ward.* In that case, the Court reasoned that "[a] debtor's aggregate interest in property is not limited to his equity, but also includes the right of possession, the equity of redemption and the right to create future equity by making mortgage payments." *Id.* at 6 (citing *Cravey v. L'Eggs Products, Inc. (In re Cravey),* 100 B.R. 119, 122 (Bankr.S.D.Ga.1989)). Viewing the concept of impairment broadly, the *Ward* court stated:

The concept of impairment should not be construed restrictively but in a manner consistent with the "fresh start" purpose of the Bankruptcy Code.... Allowing a ju-dicial lien to remain as a charge against the properties until such time as there is appreciation in value or sufficient built-up equity or some other event to allow enforcement would impair Debtor's ability to use her rights under the exemption laws to facilitate a "fresh start". Included in the concept of a "fresh start" is not only allowable exemptions and the discharge allowed Chapter 7 debtors under § 727(a) of the Code, but also the accrual to Debtor's benefit of any post-petition appreciation in the value of the exempt properties and any post-petition built-up equity which would be paid upon the sale of the properties. This court believes that the only way to give Debtor the full benefit of her allowed exemptions is to permit avoidance of FDIC's entire judicial lien under § 522(f)(1) of the Code.

*Ward* at 21–22.

Both *Ward* and *Hunter* were based on viable interpretations of the Bankruptcy Code. The fact that the courts reached opposite conclusions does not reflect a defect in reasoning, but rather the fact that the version of section 522(f) in force at the time those cases were decided did not provide a definition of the phrase "impairs an exemption." Courts were left to apply the terms as faithfully as possible in light of the perceived conflict between the "plain language" of section 522(f) and the "fresh start" objectives of the Code.

■ Shortly after the *Hunter* and *Ward* decisions were announced, the Eleventh Circuit decided the case of *Wrenn v. American Cast Iron Pipe Co. (In re Wrenn),* 40 F.3d 1162 (11th Cir.1994). In *Wrenn,* the court adopted the "carve out" approach utilized by the *Hunter* court. In doing so, the court cited with approval the Ninth Circuit case of *In re Chabot,* 992 F.2d 891 (9th Cir.1993) which holds that "the plain meaning of the language of § 522(f) limits its lien avoidance to the value of the exemptions provided in § 522(b). Furthermore, [*Chabot* ] concluded that applying the plain meaning of the statute gave any postdischarge appreciation to the lienholder, and that this result was consistent with the holding of *Dewsnup* [*Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116

L.Ed.2d 903 (1992) ]." *Id.* at 1166 (citing *Chabot* at 895). In *Wrenn,* the court concluded that a judicial lien may only be avoided to the extent that it actually interferes with a claimed exemption. *Id.* at 1167. Therefore, the *Wrenn* decision controls those cases in the Eleventh Circuit arising under the former section 522(f), and those debtors may only avoid judicial liens to the extent that such liens interfere with the exemptions available to a debtor as measured by the dollar amount of the exemption claim.

On October 22, 1994, the provisions of the Bankruptcy Reform Act of 1994 ("Reform Act") became effective. Pub.L. No. 103–394 (1994). Debtors' case, having been filed after that date, is subject to the Reform Act rather than the Bankruptcy Code as it existed when the *Hunter, Ward,* and *Wrenn* cases were decided. The Reform Act altered section 522(f) providing the definition of "impairment" which has previously lacked consensus in federal courts. Section 522(f) now provides in pertinent part:

> (2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—
>> (i) the lien;
>> (ii) all other liens on the property; and
>> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property; exceeds the value that the debtor's interest in the property would have in the absence of any liens.

11 U.S.C. § 522(f)(2)(A) (Norton 1995).

■ The definition of impairment contained in section 522(f)(2)(A) was designed to codify *In re Brantz,* 106 B.R. 62 (Bankr. E.D.Pa.1989) which was cited with approval by the United States Supreme Court in the case of *Owen v. Owen,* 500 U.S. 305, 313 n. 5,

111 S.Ct. 1833, 1838 n. 5, 114 L.Ed.2d 350 (1991). In approving the *Brantz* decision, Congress explicitly considered and rejected the approach of the *Chabot* decision which was relied upon by the Eleventh Circuit in *Wrenn.* HR Rep. 103–834, 103rd Cong., 2nd Sess. 35–37 (Oct. 4, 1994). Therefore, consistent with the result reached in *Ward,* Congress has now specified that judicial liens may be avoided in their entirety if they do not attach to value in excess of the total of prior consensual liens and exemption claims.

Section 522(f)(2)(A) is a mathematical calculation. However, the formula ultimately adopted by Congress differs in structure from the one used in the *Brantz* case, which Congress intended to codify. The *Brantz* court stated the formula as follows:

1. Determine the value of the property on which a judicial lien is sought to be avoided.

2. Deduct the amount of all liens not to be avoided from (1).

3. Deduct the Debtors' allowable exemptions from (2).

4. Avoidance of all judicial liens results unless (3) is a positive figure.

5. If (3) does result in a positive figure, do not allow avoidance of liens, in order of priority, *to that extent only* (emphasis added [by *Brantz* court] ).

*Id.* at 68 (quoting *In re Magosin,* 75 B.R. 545, 547 (Bankr.E.D.Pa.1987)).

■ The formula adopted by Congress is similar to the formula used by the *Brantz* court if the language of section 522(f)(2)(A) "impair an exemption to the extent that" is read in conjunction with step 5 as stated above.[2]

---

2. There are three factual patterns that have been troublesome to the courts. The first is where the value of the property does not exceed the consensual liens. The second is where the value is more than the consensual liens but not more than the consensual liens plus the debtor's exemption claim. The third is where the value exceeds the consensual lien plus debtor's exemption claim. The *Ward* case is based on the first pattern, as is the *Chabot* case. The *Hunter* case is based on the second pattern. The Court is unable to discern which fact pattern the *Wrenn* case is based on because of the lack of any finding as to fair market value.

The formulas used by Congress and the *Brantz* court differ in form. Both formulas call for partial avoidance of a lien in some cases using the fair market value of the property as a benchmark. The goal of each formula is to determine the existence of equity in property above consensual liens plus exemptions, and avoid a judicial lien if no such equity exists. A debtor's ability to enjoy the future appreciation of property is endorsed by the legislative history of section 522(f)(2)(A) if all equity in the property is con-

In the matter before this Court, the stipulations entered into between the parties place the value of the subject real estate at either less than the amount of the first mortgage or less than the amount of the first mortgage plus Debtors' exemptions. The parties have stipulated that there is no remaining value above the consensual liens plus Debtors' exemptions. Pursuant to 11 U.S.C. § 522(f)(2)(A), Debtors' exemptions are impaired, and Debtors are entitled to avoid the judicial lien of A & P Brown in the subject property pursuant to 11 U.S.C. § 522(f)(1).[3]

An order in accordance with this memorandum opinion will be entered on this date.

sumed by consensual liens and claims of exemption. A judicial lien will not be avoided if equity remains above the consensual liens plus claims of exemption, but rather will be subject to some kind of partial avoidance.

The new section 522 now seems to serve a dual function. The lien avoidance provisions of section 522(f)(2)(A) are similar to the lien stripping provisions of section 506. This is because Congress has chosen to include in the definition of impairment the interference with the enjoyment of future appreciation in property. Exemptions are considered to include both the present cash value as well as the right to enjoy future appreciation. Where equity exists above the consensual liens plus the claims of exemption, section 522 appears to reduce the judicial lien to the value of the property leaving the judicial lien intact alongside the debtor's exemption claim. In such a case, both the debtor and creditor would have to share future appreciation in some way.

The problem with this approach is that the result is unrealistic. A lien is an absolute entitlement. Property is either subject to a lien, or not. What matters is the amount of the debt that can be asserted against the property through the lien. Under section 506, the bifurcation of a claim results in a division of the claim amount between the portion secured by the lien, and the portion that is unsecured. The concept of bifurcation of the lien, rather than the debt which is secures, is heretofore unknown. It appears that this fact is what has led courts to conclude that the appropriate analysis under the former 522(f) is to think in terms of "carving out" the exemption rather than reducing the lien.

The provisions of section 522(f) only provide for avoiding the lien, not reducing the lien. There is no provision for reducing the claims secured by the lien. The concept of avoidance as an effect that can be limited "to the extent" of impairment has now been reduced to a numeric calculation. Still, there is no way to reflect the distinction in the result where impairment occurs to a greater extent or to a lesser extent unless the claim secured by the lien is reduced.

The "carve out" approach does not seem to be favored by the amendment since it denies the debtor the ability to enjoy future appreciation. The new section seems to try to protect this possibility for the debtor even where partial avoidance seems mandated. Thus, although the amendment has resolved the *Ward* and *Hunter* dilemma clearly, a problem remains in the third fact pattern where impairment is only partial.

Aside from the "carve out" analysis, or the claims bifurcation process of section 506, the only remaining option is to conclude that the result of a partial impairment is the same as total impairment, that being complete lien avoidance. Even that result is impractical because it could be easily avoided by the creditor's voluntary reduction in the amount of the claim secured by the lien. This kind of claims gamesmanship is surely not what this amendment was intended to invite.

3. The parties have not alleged, nor does the evidence support, the notion that the judicial lien before this Court could constitute a judicial lien securing a debt to a former spouse under 11 U.S.C. § 522(f)(1)(A)(i).