**Emilio O. GONZALEZ and Bernadine A. Gonzalez, Appellants,**

v.

**FIRST NATIONAL BANK OF BOSTON, Appellee.**

Bankruptcy No. 93–40030–NMG.

United States District Court,
D. Massachusetts.

Jan. 23, 1996.

Carl D. Aframe, Worcester, MA, for appellants.

Kevin J. Simard, Daniel S. Bleck and Isaac H. Peres, Boston, MA, for appellee.

MEMORANDUM AND ORDER

GORTON, District Judge.

This is an appeal from an order of the Bankruptcy Court denying a motion of the Debtors/Appellants ("the Debtors") to avoid a real estate attachment lien held by Appellee on their property at 254 Worcester Street, North Grafton, Massachusetts ("the Premises"), pursuant to Bankruptcy Code § 522(f). For the reasons stated herein, this Court: 1) concludes that the Bankruptcy Court erred as a matter of law in its ruling and 2) will, therefore reverse the Bankruptcy Court, allow the Debtors' motion and discharge the attachment.

**I. BACKGROUND**

On June 29, 1989, the Debtors, Emilio O. and Bernadine A. Gonzalez, borrowed $600,000 from the Appellee, The First National Bank of Boston ("the Bank"). A mortgage note was executed, and the Debtors granted to the Bank a mortgage covering certain property located on Grafton Street in Worcester, Massachusetts ("the Grafton Street Property"). The Debtors later defaulted under the note and the Bank made demand upon them for payment in full. The Debtors failed to make such payment and the Bank began an action to collect on the note.

On February 26, 1991, expecting a substantial deficiency after the foreclosure of its

mortgage covering the Grafton Street Property, the Bank sought and obtained a real estate attachment ("the Attachment") in the amount of $300,000 against all property of the Debtors located in Worcester County, including the Premises.

On December 6, 1991, the Debtors filed a Voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code. During the course of the bankruptcy proceedings, the Debtors obtained a discharge from any and all personal liability on their debts, including the remaining amount owed to the Bank under the loan arrangement. The Bank's Attachment of the Premises, however, remained of record.

Debtors subsequently filed a motion in the Bankruptcy Court to dissolve the Attachment obtained by the Bank. At that time, the Premises had a fair market value of $129,100, a liquidation value of $110,235, and was subject to a first mortgage of $106,000 held by another party. The Debtors claimed an exemption of $4,235. Pursuant to § 522(f)(1) of the Bankruptcy Code, the Debtors moved to avoid in its entirety the $300,000 attachment lien on the Premises held by the Bank. At that time, § 522(f)(1) read, in pertinent part, as follows:

> Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is ... a judicial lien....

The Debtors argued that a complete, rather than partial, avoidance of the $300,000 lien was justified by the fresh start policy of the Bankruptcy Code. The Bank countered that to allow the Debtors to avoid the entire lien would go beyond the express limitations set forth in the statute which provided for avoidance of a lien only to the extent that it impaired the Debtors' exemption.

On January 13, 1993, the Bankruptcy Court issued a Memorandum and Order declining to allow full avoidance of the $300,000 lien and ordering that only $4,235, the amount of the Debtors' claimed exemption, be avoided. The balance of the Bank's lien, $295,765, remained as an encumbrance on

the Premises, although it was subordinated to the Debtors' exemption of $4,235. The Debtors then filed the instant appeal.

## II. DISCUSSION

■ After this matter was first argued in the Bankruptcy Court and appealed to this Court, Congress amended § 522(f) of the Bankruptcy Code. The amendments to that section became effective on October 22, 1994 and were not intended to apply to cases commenced before that date. The amended statute, therefore, is not applicable to this appeal. Its legislative history, however, is enlightening and very relevant.

■ The legislative history of the 1994 amendments specifically criticizes the interpretation of § 522(f) adopted by the Bankruptcy Court in this case and explains that such amendments were designed to prevent the result reached below:

> Because the Bankruptcy Code does not currently define the meaning of the words "impair an exemption" in section 522(f), several court decisions have, in recent years, reached results that were not intended by Congress when it drafted the Code. This amendment would provide a simple arithmetic test to determine whether a lien impairs an exemption ....
>
> The decisions that would be overruled involve several scenarios....
>
> [One] situation is where the judicial lien the debtor seeks to avoid is partially secured.... [I]n an example where the debtor has a $10,000 homestead exemption, a $50,000 house and a $40,000 first mortgage, most commentators and courts would have said that a judicial lien of $20,000 could be avoided in its entirety. Otherwise, the creditor would retain all or part of the lien and be able to threaten postbankruptcy execution against the debtor's interest which, at the time of the bankruptcy is totally exempt. However, a few courts, including the Ninth Circuit in In re Chabot, 992 F.2d 891 (9th Cir.1992), held that the debtor could only avoid $10,000 of the judicial lien in this situation, leaving the creditor after bankruptcy with a $10,-000 lien attached to the debtor's exempt interest in property. This in turn will

result, at a minimum, in any equity created by mortgage payments from the debtor's postpetition income—income which the fresh start is supposed to protect—going to the benefit of the lienholder. It may also prevent the debtor from selling his or her home after bankruptcy without paying the lienholder, even if that payment must come from the debtor's $10,000 exempt interest. The formula in the section would not permit this result.

The situation of the Debtors is directly analogous to that described above, but the result reached by the Bankruptcy Court below, at least according to this legislative history, was directly contrary to the intentions of Congress when it initially enacted § 522(f).

Although this Court is mindful of its obligation to review the instant appeal in accordance with the law as it existed at the time of the Bankruptcy Court's decision, it is persuaded by the logic of the drafters of the legislative history of the original intent of Congress which this Court cannot ignore. The Bankruptcy Court did not have the benefit of such interpretation but this Court does and, accordingly, the decision of the Bankruptcy Court is VACATED and the motion of Debtors' to dissolve the Attachment held by appellee on the Premises is ALLOWED.

So Ordered.