In re Edward E. CORSON, Debtor.

Edward E. CORSON, Movant,

v.

FIDELITY AND GUARANTY INSUR-ANCE COMPANY and United States Fidelity and Guaranty Company, Respondents.

Bankruptcy No. 96–30562.

United States Bankruptcy Court,
D. Connecticut.

March 13, 1997.

Frederick A. Dlugokecki, Naugatuck, CT, for Debtors.

Jon P. Antkowiak, Blume, Elbaum & Collins, Hartford, CT, for Respondents.

### MEMORANDUM OF DECISION ON MOTION TO AVOID JUDICIAL LIEN

ALBERT S. DABROWSKI, Bankruptcy Judge.

### I. INTRODUCTION.

This contested matter concerns the avoidance of liens upon real property in which the Debtor alleges to hold an exemption interest. The matter raises questions as to (1) the applicability of Connecticut's homestead exemption and (2) the proper method of calculating exemption impairment under amended Bankruptcy Code Section 522(f).

### II. FACTUAL BACKGROUND.

The Court finds the following material facts from (1) its judicial notice and review of the parties' pleadings and other elements of the official public record of this case, and (2) the parties' stipulation of facts orally placed on the record at a hearing held February 5, 1997.

On February 28, 1996, the Debtor commenced the instant bankruptcy case through the filing in this Court of a voluntary petition pursuant to 11 U.S.C. § 302(a), together with a set of Statements and Schedules.

The Debtor's Schedule A—"REAL PROPERTY"—disclosed a fee simple interest in a parcel, or contiguous parcels, of real property located at 15 Lake Road, Boz-

rah, Connecticut (hereafter referred to as the "Residence"). The Debtor claims, and the Respondents do not dispute, that the Residence constitutes his primary residence, and thus is his "homestead" within the meaning of Connecticut General Statutes § 52–352a(e).[1] The Debtor values his interest in the Residence at $315,000.00. Such valuation was supported by a professional appraisal report attached to the instant motion, and is not disputed by the Respondents.

In his Schedule C—"PROPERTY CLAIMED AS EXEMPT"—the Debtor elected to utilize the federal bankruptcy law exemption scheme under 11 U.S.C. § 522(d), but claimed a "homestead" exemption in the Residence in the amount of $75,000.00 pursuant to Connecticut General Statutes § 52–352b(t).[2] The Debtor's meeting of creditors pursuant to Fed.R.Bank.P. 2003(a) was held and concluded on April 2, 1996; and to date, the debtor's exemption list has not been amended or supplemented. As such, the 30–day time period to object to the Debtor's claimed exemptions, as measured by Fed. R.Bank.P. 4003(b), expired on or prior to May 2, 1996. To date, no party in interest has filed an objection to the Debtor's claimed homestead exemption.

The following consensual non-judicial liens encumber the Residence and are not challenged in this matter:

1. Mortgage dated January 21, 1993, to Putnam Savings Bank, to secure an original principal loan amount of $250,000.00, and recorded January 27, 1993, in the Town of Bozrah Land Records in Volume 52 at Page 20. For purposes of this contested matter, the parties stipulate that the loan secured by such mortgage has a present balance of $235,978.86.

2. Mortgage dated January 21, 1993, to Judith A. Corson, to secure an original principal amount of $50,000.00, and recorded January 27, 1993, in the Town of Bozrah Land Records in Volume 52 at Page 33. For purposes of this contested matter, the parties stipulate that the loan secured by such mortgage has a present balance of $1,185.96.

The historical background of the attachment liens which are the subject of this matter can be summarized as follows. The Debtor was a principal in a business entity known as Valley View Enterprises, Inc. (hereafter referred to as "Valley View"), which was involved in the construction industry. The Respondents agreed to act as bonding sureties for Valley View in connection with certain of its construction projects. In furtherance of that financial relationship, the Debtor and Judith A. Corson, *inter alia*, entered into at least two Master Surety Agreements, which were executed on April 25, 1988 and August 30, 1991 respectively. The Respondents allege that pursuant to the Master Surety Agreements the Debtor and Judith A. Corson, *inter alia*, agreed to exonerate and indemnify the Respondents against any loss sustained by the Respondents as a result of their provision of surety bonds on behalf of Valley View. On or about November 20, 1990, the Respondents issued payment and performance bonds on behalf of Valley View in connection with a construction project involving renovations to the Student Center at Southern Connecticut State University (hereafter referred to as "SCSU") in New Haven, Connecticut. The Respondents have paid the claim of a subcontractor of Valley View in connection with the SCSU project in the amount of $167,114.29 [3], and claim to have incurred related expenses in excess of $20,000.00.

---

1. The parties appear to agree that if the Debtor has a fee simple interest in two contiguous parcels, both such parcels constitute his "homestead" for purposes of this matter. The Court makes no independent findings in that regard, and assumes for the purposes of this matter the factual determinations agreed between the parties.

2. The Debtor's exemption scheme election and his actual claim of individual exemptions are inconsistent. For purposes of this Memorandum

of Decision the Court treats the Debtor's exemption scheme election as a scrivener's error, and will give effect to his state law-based exemption claims.

3. The parties have not stipulated, and neither has alleged, the date on which payment to the subcontractor was made. This Memorandum of Decision assumes that date to be after October 1, 1993.

Seeking to recover certain alleged losses, including the payment of the subcontractor's claim, the Respondents commenced a civil action against the Debtor and Judith A. Corson, *inter alia*, in the United States District Court for the District of Connecticut on or about October 19, 1994, seeking monetary recovery under the Master Surety Agreements and the common law doctrines of equitable subordination and implied indemnity. In the context of that civil action, writs of attachment were issued as a prejudgment remedy by authority of the District Court. Those writs form the bases of the liens sought to be avoided in this matter. With respect to those liens, the Debtor further alleges as follows:

On February 16, 1995 an Attachment was entered in the amount of $200,000.00 in favor of Fidelity and Guaranty Insurance Company and United States Fidelity and Guaranty Company *against the movant* in a civil action. Such Attachment was duly recorded on February 16, 1995, in the Town Clerk's Office in Bozrah, Connecticut in Volume 55 at Page 313. A copy of such Attachment is attached hereto and marked as Exhibit B. (As to front 11+ Acres).

\* \* \* \* \* \*

On February 16, 1995 an Attachment was entered in the amount of $200,000.00 in favor of Fidelity and Guaranty Insurance Company and United States Fidelity and Guaranty Company *against the movant* in a civil action. Such Attachment was duly recorded on February 16, 1995, in the Town Clerk's Office in Bozrah, Connecticut in Volume 55 at Page 315. A copy of such Attachment is attached hereto and marked as Exhibit C. (As to 27.87+ rear acres).

\* \* \* \* \* \*

On June 3, 1995 an Attachment was entered in the amount of $200,000.00 in favor of Fidelity and Guaranty Insurance Company and United States Fidelity and Guaranty Company against the movant in a civil action. Such Attachment was duly recorded on June 3, 1995, in the Town

Clerk's Office in Bozrah, Connecticut in Volume 55 at Page 668. A copy of such Attachment is attached hereto and marked as Exhibit D.

Debtor's Motion to Avoid Judicial Lien Impairing Exemption, par. VIII—X (emphasis supplied).

In their Objection to Motion to Avoid Judicial Lien Impairing Exemption (Doc. I.D. No. 10), the Respondents have specifically admitted the foregoing allegations. Nonetheless, upon an independent inspection of Exhibits B, C and D referenced in the foregoing allegations (hereafter referred to as the "Motion Exhibits"), the Court makes the following observations.

Motion Exhibits B and C are Certificates of Attachment of "all right, title and interest of said defendant: *JUDITH A. CORSON* in and to a certain tract or parcel of land, with all the buildings thereon and bounded and described as follows to wit: SEE PROPERTY DESCRIPTION ATTACHED HERETO:" (emphasis supplied). A legal description of a "Tract I" is attached to Motion Exhibit B, and a legal description of a "Tract II" is attached to Motion Exhibit C.

By contrast, Motion Exhibit D is a Certificate of Attachment of "all right, title and interest of said Defendant: *EDWARD E. CORSON* in and to a certain tract or parcel of land, with all the buildings thereon and bounded and described as follows to wit: SEE PROPERTY DESCRIPTION ATTACHED HERETO:" (emphasis supplied). Although no legal description was attached to Motion Exhibit D as submitted to the Court, the Court will assume, consistent with the parties' stipulation, that Motion Exhibit D describes at least the entire Residence.

Because the attachments represented by Motion Exhibits B and C purport to encumber only the interest(s) of *Judith A. Corson* in the Residence[4], the Court need not consider the avoidance of those attachments as judicial liens since Judith A. Corson, as a non-debtor, has no standing to challenge those attachments in this Court. The only

---

4. The record in this matter discloses only one interest of Judith A. Corson in the Residence, and that is a *mortgage* interest.

attachment properly before the Court at this time is that represented by Motion Exhibit D (hereafter referred to as the "Attachment").

### III. DISCUSSION.

A bankruptcy debtor's ability to avoid a lien springs from the provisions of Section 522(f) of the Bankruptcy Code, which provides, in relevant part, that

(1) Notwithstanding any waiver of exemptions . . . the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(A) a judicial lien. . . .

11 U.S.C. § 522(f) (1996).

It is undisputed that the Attachment is a "judicial lien" within the meaning of Section 522(f). *See* 11 U.S.C. § 101(36). Thus the question that remains to be answered in this contested matter is to what extent the Attachment "impairs an exemption to which the debtor would have been entitled". That compound question contains the two issues disputed between the parties here, namely: (1) to what exemption is the Debtor entitled; and (2) to what extent does the Attachment impair that exemption?

### A. To What Exemption is the Debtor Entitled?

The nature and scope of a bankruptcy debtor's entitlement to exempt property is governed by Section 522 of the Bankruptcy Code, which provides in relevant part as follows:

\* \* \* \* \* \*

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection . . . Such property is—

(1) property that is specified under subsection (d) of this section . . . or, in the alternative,

5. "Homestead" is defined by C.G.S. § 52–352a(e) as "owner-occupied real property . . .

(2)(A) any property that is exempt under . . . State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition. . . .

11 U.S.C. § 522 (1996).

Depending upon a debtor's election of state or federal exemption schemes under Section 522(b), his or her claim of exemption in a residence is governed by either Bankruptcy Code Section 522(d)(1) or Connecticut General Statute Section 52–352b(t). Those statutes provide in relevant part as follows:

### § 522. Exemptions.

\* \* \* \* \* \*

(d) The following property may be exempted under subsection (b)(1) of this section:

(1) The debtor's aggregate interest, not to exceed $15,000 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence. . . .

11 U.S.C. § 522 (1996).

### § 52–352b. Exempt property.

The following property of any natural person shall be exempt:

\* \* \* \* \* \*

(t) the homestead[5] of the exemptioner to the value of seventy-five thousand dollars, provided value shall be determined as the fair market value of the real property less the amount of any statutory or consensual lien which encumbers it. . . .

C.G.S. § 52–352b (1996).

The Debtor has claimed a $75,000.00 "homestead" exemption pursuant to C.G.S. § 52–352b(t). The Respondents argue that the Debtor is not entitled to that exemption as against their Attachment because the

used as a primary residence."

claim secured by that judicial lien arose before October 1, 1993.[6]

This Court has consistently construed C.G.S. § 52–352b(t)'s effective date language—"This act shall take effect October 1, 1993, and shall be applicable to any lien for any obligation or claim arising on or after said date.", P.A. 93–301 § 3—so as to apply the new exemption only to a circumstance where an underlying obligation or claim—not the lien securing it—arose on or after October 1, 1993.

■ This view leads the Court to conclude in this case that the claims of the Respondents "arose" prior to October 1, 1993, since the Debtor executed the Master Surety Agreements, and the bond giving rise to the subject claims was furnished, prior to that date. Insofar as the claims involved in this matter are concerned, the Respondents had fully exposed themselves financially in reliance upon the wherewithal of the Debtor prior to the existence of a homestead exemption in Connecticut state law. It is precisely this exposure and reliance that the General Assembly sought to protect in conditioning the effective date of the new homestead exemption. Accordingly, the Connecticut homestead exemption is not "an exemption to which the debtor would have been entitled . . ." as against the Respondents.

■ The Debtor argues in the alternative that he is entitled to a $15,000.00 exemption in the Residence pursuant to 11 U.S.C. § 522(d)(1). One might argue that the Court need not address that assertion since as of the date of this Memorandum of Decision the Debtor has not amended his Schedule C to claim an exemption in the Resi-

dence under Section 522(d)(1); arguably, the Court need not speculate what exemption strategy the Debtor might employ in the future [7]. Under that view, the Court should deny the instant motion without prejudice to its re-filing after relevant amendment of Schedule C. Nonetheless, because this Court views the exemption inquiry under Section 522(f) as somewhat hypothetical by nature—that is, to determine "an exemption to which the debtor *would have been* entitled . . ." (emphasis supplied)—and in view of the Debtor's stated intention to utilize as against the Residence the full $15,000.00 federal residence exemption should the $75,000.00 State exemption be deemed unavailable, this Court will attempt to conserve the time of the Court and the parties by proceeding to determine the degree to which the Attachment impairs the $15,000.00 federal residence exemption.[8]

## B. To What Extent Does the Attachment Impair an Exemption?

Prior to the Bankruptcy Reform Act of 1994, the Bankruptcy Code did not define or otherwise describe the meaning of Section 522(f)'s words, "impair an exemption", leading to results in many cases that were contrary to Congressional intent. As amended, Section 522(f) now provides a simple arithmetic test to determine whether a lien impairs an exemption, to wit:

(2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—

(i) the lien,

(ii) all other liens on the property; and

---

**6.** The Debtor asserts that the Respondents are time-barred from challenging exemption entitlement in the context of this matter. For the reasons stated in *In re Maylin*, 155 B.R. 605 (Bankr.D.Me.1993), this Court concludes that the time limitations for exemption objections set out in Fed.R.Bank.P. 4003(b) do not restrain a lien creditor from defending a lien avoidance matter by challenging a debtor's exemption entitlement.

**7.** If, for instance, a debtor had two residences—one primary, the other secondary—he might opt to apply the $15,000 federal exemption wholly to the secondary, or to some combination of the primary and secondary, since Section

522(d)(1)—in contrast to C.G.S. § 52–352b(t)—is not limited to a "primary" residence.

**8.** Nonetheless, the Court will order the Debtor to amend Schedule C within fifteen (15) days hereof. If the Debtor fails to timely amend Schedule C, or at any time hereafter amends Schedule C to claim any property other than the Residence exempt pursuant to Section 522(d)(1), Section III.B. of this Memorandum of Decision shall be rendered *dicta*, and the limited lien avoidance ordered in this matter shall be null and void and vacated by operation of law.

(iii) the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

11 U.S.C. § 522(f) (1996).

■ In the present case, the calculation of impairment under Section 522(f)(2)(A) is relatively straightforward—the Court must simply determine and aggregate the amounts represented by subsections (i)—(iii), and then compare that sum to the value of the Debtor's unencumbered fee simple interest in the Residence. The sum of subsections (i)—(iii) is $452,164.82 calculated as follows: (i) the amount of "the lien"—i.e. the Attachment—is $200,000.00; (ii) the amount of "all other liens on the property" is $237,164.82 (Putnam Savings Bank mortgage ($235,978.86) + Judith A. Corson mortgage ($1,185.96)); and (iii) the "amount of the exemption that the debtor could claim if there were no liens on the property" is $15,000.00. The "value that the debtor's interest in the property would have in the absence of any liens", i.e. the Debtor's unencumbered fee simple interest in the Residence, is $315,000.00. Thus the sum of subsections (i)—(iii) exceeds the unencumbered fee simple interest in the Residence by $137,164.82. This is the extent to which the Attachment impairs the Debtor's presumed exemption, and the extent to which the Attachment will be avoided by order of this Court.

■ By so concluding, the Court rejects the Debtor's argument that a lien can be avoided in its entirety even if only part of the lien impairs an exemption.[9] The Debtor's view ignores the phrase, "to the extent that", in the introductory clause of Section 522(f)(2)(A), and in essence replaces that phrase with the word "if". The invalidity and impropriety of such a construction is self-evident.

## IV. CONCLUSION.

For the foregoing reasons, the Court will grant the instant motion in part by entering an Order of even date consistent with this Memorandum of Decision avoiding the attachment lien of the Respondents to the extent of $137,164.82.

## ORDER ON MOTION TO AVOID JUDICIAL LIEN

The above-captioned contested matter having come on for hearing after due notice; and the Court having this day issued its Memorandum of Decision on Motion to Avoid Judicial Lien, in accordance with which

IT IS HEREBY ORDERED that the motion of the Debtor to avoid a judicial lien impairing an exemption (Doc. I.D. No. 7) is GRANTED in part, in that the fixing of the attachment lien of the Respondents represented by a Certificate of Attachment dated and recorded June 3, 1995, in the Town of Bozrah Land Records in Volume 55 at Page 668, is avoided to the extent of $137,164.82; and

IT IS FURTHER ORDERED that within fifteen (15) days of the date of this Order the Debtor shall amend his Schedule C consistent with his intentions, and in light of the conclusions of the Court expressed in the Memorandum of Decision; and

IT IS FURTHER ORDERED that should the Debtor not amend his Schedule C within fifteen (15) days of the date of this Order, or at any time hereafter amend his Schedule C to claim as exempt under 11 U.S.C. § 522(d)(1) any residence other than real property known as and numbered 15 Lake Road, Bozrah, Connecticut, then the first decretal paragraph of this Order shall be null and void, and vacated by operation of law; and

IT IS FURTHER ORDERED that should this case be dismissed, the portion of the lien avoided by this Order shall be reinstated

---

9. On this point the "Debtor's Memorandum in Support of His Motion to Avoid Judicial Lien Impairing Exemption" (Doc. I.D. No. 27) argues, at pp. 6–7, as follows: "... to the extent a judicial lien partially impairs the debtor's exemp-tion, it can be avoided in its entirety ... [T]he respondents' liens are totally voidable ... unless the court found the value of the Residence to be in excess of $452,164.82 ...."

under 11 U.S.C. § 349 without further order of this Court.