**In re Marie C. RYAN, Debtor.**

**Bankruptcy No. 97–10630–JNF.**

United States Bankruptcy Court,
D. Massachusetts.

June 16, 1997.

John F. Cullen, Esq., Boston, MA, for Debtor, Marie C. Ryan.

John D. Sigel, Esq., Boston, MA, for Peoples Heritage Savings Bank.

## MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

## I. INTRODUCTION

The matters before the Court are 1) the "Debtor's Motion to Avoid Judicial Lien on Residential Real Estate Pursuant to 11 U.S.C. Section 522(f)," and 2) the "Motion of Peoples Heritage Savings Bank for Relief from the Automatic Stay." The Court heard both motions on April 24, 1997 and took the

matters under advisement. On May 23, 1997, the Court issued an order extending the automatic stay until June 20, 1997 because of "the complexity of the legal issue presented in the case with respect to the extent to which Peoples Heritage Savings Bank's lien may be avoided under 11 U.S.C. § 522(f)."

## II. FACTS

The Debtor filed a voluntary Chapter 13 petition on January 24, 1997. Less than one month later and prior to filing her schedules and statement of financial affairs, she moved to convert her Chapter 13 case to a case under Chapter 7. The Debtor filed her schedules and statement of financial affairs simultaneously with her motion to convert, which motion was granted on February 13, 1997.

On Schedule A–Real Property, the Debtor listed an ownership interest in property located at 56 Green Street, Charlestown, Massachusetts (the "Property"). The Debtor ascribed a $140,000.00 value to the Property. On Schedule D–Creditors Holding Secured Claims, the Debtor indicated that the Property was subject to a $38,021.08 first mortgage to Bank of Boston and a $290,596.79 disputed judicial lien held by Peoples Heritage Savings Bank ("Peoples"). On Schedule C–Property Claimed Exempt, the Debtor claimed an exemption in the Property in the sum of $10,161.00 pursuant to 11 U.S.C. § 522(d)(1).

On March 28, 1997, the Debtor filed a motion to avoid Peoples' judicial lien in which she stated the following:

[b]ased on the formula provided under 11 U.S.C. § 522(f)(2), People's [sic] lien, all other liens and the amount of the Debtor's claimed exemption total $338,778.87, which exceeds the value of the Debtor's interest in the Property by $198,778.87. Accordingly, the Debtor may avoid People's [sic] lien against the Property to the extent of the impairment in the amount of $198,-778.87 pursuant to 11 U.S.C. § 522(f)(1).

The Debtor requested that the Court enter an order avoiding the judicial lien held by Peoples to the extent of $198,778.87.[1]

---

1. Section 522(f)(2)(A) contains a definition of impairment. It provides the following:

(2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—

Peoples filed an objection to the Debtor's motion and simultaneously filed its Motion for Relief from the Automatic Stay. In its objection, it stated 1) that the Debtor is not the owner of the Property, but rather the sole trustee of the Marie C. Ryan Family Trust (the "Trust"), which owns the Property; 2) that the beneficiaries of the Trust are the Debtor's children; 3) that the Debtor reserved her right to amend or revoke the Trust; and 4) that the Property does not constitute property of the Debtor's estate as to which the Debtor can claim an exemption or avoid a judicial lien. Additionally, Peoples disputed the value attributed to the Property by the Debtor.

The Debtor filed a response to Peoples' objection in which she observed that Peoples had claimed in litigation that the transfer of the Property to the Trust was a fraudulent conveyance, that judgment entered against both the Debtor and the Trust, and that "by virtue of the District Court judgment the Property had been determined to be the Debtor's," although title to the Property was still in the name of the Trust. Peoples filed a reply disputing this assertion and noting that the statute of limitations for the exercise of the Chapter 7 Trustee's avoidance powers under 11 U.S.C. §§ 548, 550 has expired and that the Debtor "is attempting to benefit from her own fraudulent transfer."

In its Motion for Relief from the Automatic Stay, Peoples argued that the Debtor's schedules establish her lack of equity in the Property and that, as the Debtor elected to proceed under Chapter 7, the Property is unnecessary for an effective reorganization. *See* 11 U.S.C. § 362(d)(2). The Debtor objected to Peoples' motion stating that she has equity in the Property equal to the amount of her exemption.

At the hearing held on April 24, 1997, the Court resolved the issue raised by Peoples with respect to the Debtor's ownership of the

(i) the lien [$290,596.79];
(ii) all other liens on the property [$38,-021.08];
(iii) the amount of the exemption that the debtor could claim if there were no liens on the property [$10,161.00];
exceeds the value that the debtor's interest in the property would have in the absence of any liens [$140,000.00].

Property. Citing *In re Cowles,* 143 B.R. 5 (Bankr.D.Mass.1992), the Court determined that the Property was property of the Debtor's estate because she retained the power to revoke the Trust. Moreover, counsel to the Debtor represented that the Debtor as Trustee of the Trust would deed the Property to the estate.

With respect to the Debtor's lien avoidance motion the Court articulated an issue as to whether Peoples' judicial lien should be avoided in its entirety or whether it should be avoided only to the extent that it impaired the Debtor's exemption. Additionally, Peoples indicated that it had obtained a recent appraisal of the property which indicated that its value is $233,000.00.

## III. DISCUSSION

Section 522(f)(2)(A) was added by the Bankruptcy Reform Act of 1994 to provide a "simple arithmetic test to determine whether a lien impairs an exemption" for cases filed after October 22, 1994. According to the House and Senate Reports to the 1994 amendment, the formula was based upon the decision in *In re Brantz,* 106 B.R. 62 (Bankr. E.D.Pa.1989), which was cited favorably by the United States Supreme Court in *Owen v. Owen,* 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991). In *Brantz,* the court set forth the following formula for determining lien avoidance under § 522(f)(1):

1. Determine the value of the property on which a judicial lien is sought to be avoided.

2. Deduct the amount of all liens not to be avoided from (1).

3. Deduct the Debtors' allowable exemptions from (2).

4. Avoidance of all judicial liens results unless (3) is a positive figure.

5. If (3) does result in a positive figure, do not allow avoidance of liens, in order of

11 U.S.C. § 522(f)(2)(A). Thus, the Debtor calculated that $338,778.87 exceeded the value of her property, i.e. $140,000.00, by $198,778.87, which is the extent to which she sought avoidance of Peoples' lien.

priority, *to that extent only* (emphasis added).

106 B.R. at 68 (citing *In re Magosin,* 75 B.R. 545, 547 (Bankr.E.D.Pa.1987)). However, as the court in *In re Thomsen,* 181 B.R. 1013 (Bankr.M.D.Ga.1995), noted, the formula adopted by Congress differs in structure from the one used by the court in *Brantz.* The court in *Thomsen* added "[t]he formula adopted by Congress is similar to the formula used by the *Brantz* court if the language of section 522(f)(2)(A) 'impair an exemption to the extent that' it is read in conjunction with step 5" as set forth above. *Id.* at 1016.[2] Nevertheless, the formula set forth in § 522(f)(2)(A) is straightforward and easily applied. *See* David Gray Carlson, *Security Interests on Exempt Property After the 1994 Amendments to the Bankruptcy Code,* 4 Am. Bankr.Inst.L.Rev. 57, 59 (1996).

In addition to the reference to the *Brantz* formula, the House Report states that new section 522(f)(2)(A) was intended to overrule *In re Chabot,* 992 F.2d 891 (9th Cir.1993) and *In re Gonzalez,* 149 B.R. 9 (Bankr.D.Mass. 1993). The legislative history cites *Gonzalez* in the context of an example in which the debtor has no equity in property over and above a lien senior to the judicial lien that the debtor is attempting to avoid (i.e., $40,000 mortgage and $40,000 property value), and it cites *Chabot* in the context of a partially secured judicial lien. However, although the legislative history states that the amendment was intended to overrule these decisions, the hypothetical scenarios do not present the facts or the issues presented in the cases cited.

In particular, the *Gonzalez* case does not correspond to the example cited in the legislative history, namely as a case where there is no equity over and above the senior lien. Indeed, in *Gonzalez,* there was equity in the debtor's property of $23,100 available to satisfy the debtor's claimed exemption of $4,235 and to partially satisfy the $300,000 judicial lien at issue. The court in *Gonzalez* avoided the lien to the extent of $4,235, the amount of the claimed exemption, and subordinated the balance to the claimed exemption. Interestingly, if the formula set forth in § 522(f)(2)(A) is applied to the facts in *Gonzalez,* the $300,000 judicial lien would be

---

2. In *Thomsen* the court also observed the following:

> The formulas used by Congress and the *Brantz* court differ in form. Both formulas call for partial avoidance of a lien in some cases using the fair market value of the property as a benchmark. The goal of each formula is to determine the existence of equity in property above consensual liens plus exemptions, and avoid a judicial lien if no such equity exists. A debtor's ability to enjoy the future appreciation of property is endorsed by the legislative history of section 522(f)(2)(A) if all equity in the property is consumed by consensual liens and claims of exemption. A judicial lien will not be avoided if equity remains above the consensual liens plus claims of exemption, but rather will be subject to some kind of partial avoidance.
>
> The new section 522 now seems to serve a dual function. The lien avoidance provisions of section 522(f)(2)(A) are similar to the lien stripping provisions of section 506. This is because Congress has chosen to include in the definition of impairment the interference with enjoyment of future appreciation in property.... Where equity exists above the consensual liens plus the claims of exemption, section 522 appears to reduce the judicial lien to the value of the property leaving the judicial lien intact alongside the debtor's exemption claim.

> In such a case, both the debtor and creditor would have to share the future appreciation in some way.
>
> ... The concept of bifurcation of a lien, rather than the debt which is [sic] secures, is heretofore unknown. It appears that this fact is what has led courts to conclude that the appropriate analysis under the former 522(f) is to think in terms of "carving out" the exemption rather than reducing the lien ... The concept of avoidance as an effect that can be limited "to the extent" of impairment has now been reduced to a numeric calculation. Still, there is no way to reflect the distinction in the result where impairment occurs to a greater extent or to a lesser extent unless the claim secured by the lien is reduced.
>
> The "carve out" approach does not seem to be favored by the amendment since it denies the debtor the ability to enjoy future appreciation. The new section seems to try to protect this possibility for the debtor even where partial avoidance seems mandated. Thus ... a problem remains ... where impairment is only partial.
>
> Aside from the "carve out" analysis, or the claims bifurcation process of section 506, the only remaining option is to conclude that the result of a partial impairment is the same as total impairment, that being complete lien avoidance....

181 B.R. at 1016–17 n. 2.

avoided to the extent of $281,225, not $4,235.[3]

The *Gonzalez* decision was appealed to the United States District Court for the District of Massachusetts, which vacated the bankruptcy court's order and granted the debtor's motion to avoid the real estate attachment in its entirety. *Gonzalez v. First Nat. Bank of Boston,* 191 B.R. 2 (D.Mass.1996). The district court noted that the amended statute was not applicable to the appeal but found the legislative history to be "very relevant." *Id.* at 3. The court quoted extensively from the legislative history[4] and stated that the debtor's situation was "directly analogous" to the situation described in that portion of the legislative history in which *Chabot* is cited, i.e., property valued at $50,000, subject to a first mortgage of $40,000, a $10,000 homestead and a $20,000 judicial lien. The court, however, made no attempt to utilize the formula set forth in § 522(f)(2)(A).

The commentary about the *Chabot* case contained in the legislative history suggests that partially secured liens should be avoided in their entirety, despite the conflicting favorable reference to the *Brantz* formula. In citing *Chabot* in its summary of the second hypothetical scenario that the amendment was designed to address, the House Report mischaracterizes the holding of *Chabot* when it states that the court avoided a portion of the judicial lien, when in fact, it did not avoid any portion of the judicial lien. Furthermore, although the commentary in the House

Report's summary of the second situation that the amendment was designed to address suggests that partially secured liens should be avoided entirely, the hypothetical is not a situation where there is equity in the property that exceeds the total sum of non-judicial liens plus the homestead exemption, as in *Chabot.*

In *Chabot,* the debtors owned real property valued at $400,000 subject to three mortgages senior to the judicial lien in the sum of $241,579.08 they sought to avoid: a first mortgage in the sum of $86,412.42, a second mortgage in the sum of $38,540.88 and a subsequently subordinated third mortgage in the sum of $173,000.00. The debtors claimed a $45,000.00 exemption which they recorded prior to the judicial lien. The court affirmed that the debtors' homestead exemption would not be diminished in value by the creditor's judicial lien and refused to avoid the judicial lien. It stated that "[w]e think a simpler view of section 522(f), *which protects the amount of the exemption only,* is dictated by the plain meaning of the statute." *Id.* at 895 (emphasis supplied).

Unfortunately, although the legislative history indicates that the formula set forth in § 522(f)(2)(A) is designed to avoid the result reached by the court in *Chabot,* the formula enacted does not mandate complete avoidance of the lien. If section 522(f)(2)(A)'s formula is applied to the facts in *Chabot,* the judicial lien could be avoided to the extent of

---

**3.** Applying § 522(f)(2)(A)'s formula to the facts in *Gonzalez* leads to the following result: the sum of the judicial lien ($300,000), all other liens on the property ($106,000) plus the amount of the exemption that the debtor could claim ($4,325) exceeds the value of the debtor's interest in the property in the absence of any liens ($129,100) by $281,225 ($410,325 − $129,100 = $281,225).

**4.** The legislative history indicates the following:
The second situation is where the judicial lien the debtor seeks to avoid is partially secured. Again, in an example where the debtor has a $100,000 homestead exemption, a $50,000 house and a $40,000 first mortgage, most commentators and courts would have said that a judicial lien of $20,000 could be avoided in its entirety. Otherwise, the creditor would retain all or part of the lien and be able to threaten postbankruptcy execution against the debtor's interest which, at the time of the bankruptcy petition is totally exempt. However a few courts, including the Ninth Circuit in

*In re Chabot,* 992 F.2d 891 (9th Cir.1993), held that the debtor could only avoid $10,000 of the judicial lien in this situation, leaving the creditor after bankruptcy with a $10,000 lien attached to the debtor's exempt interest in the property. This in turn will result, at a minimum, in any equity created by mortgage payments from the debtor's postpetition income—income which the fresh start is supposed to protect—going to the benefit lienholder. It may also prevent the debtor from selling his or her home after bankruptcy without paying the lienholder, even if that payment must come from the debtor's $10,000 exempt interest. The formula in the section would not permit this result.
H.R.Rep. 103–835, 103rd Cong., 2nd Sess. 53 (Oct. 4, 1994), U.S.Code Cong. & Admin.News 1994, pp. 3340, 3362 (reprinted in William L. Norton, Jr., *Norton Bankruptcy Code Pamphlet 1996–1997 Ed.,* p. 500).

$184,532.38, the amount by which the judicial lien, the total of all consensual liens and the amount of the claimed exemption exceeded the value of the property.

Thus, several courts have concluded, unlike the district court in *Gonzalez*, that partially secured judicial liens need not be avoided in their entirety. *In re Corson*, 206 B.R. 17 (Bankr.D.Conn.1997); *In re Moe*, 199 B.R. 737 (Bankr.D.Mont.1995); *In re Todd*, 194 B.R. 893 (Bankr.D.Mont.1996). *See also* Carlson, *supra*, at 68; 2 William L. Norton, Jr., *Norton Bankruptcy Law and Practice 2d*, § 46:23, Supp. p. 211 (Clark Boardman Callaghan 1994 & Supp.1996). The *Corson* case illustrates how the formula set forth in § 522(f)(2)(A) is applied:

> In the present case, the calculation of impairment under Section 522(f)(2)(A) is relatively straightforward—the Court must simply determine and aggregate the amounts represented by subsections (i)—(iii), and then compare that sum to the value of the Debtor's unencumbered fee simple interest in the Residence. The sum of subsections (i)—(iii) is $452,164.82 calculated as follows: (i) the amount of "the lien"—i.e., the Attachment—is $200,000; (ii) the amount of "all other liens on the property" is $237,164.82 ...; and (iii) the amount of. the exemption that the debtor could claim if there were no liens on the property is $15,000.00. The "value that the debtor's interest in the property would have in the absence of any liens", i.e., the Debtor's unencumbered fee simple interest in the Residence, is $315,000.00. Thus the sum of subsections (i)—(iii) exceeds the unencumbered fee simple interest in the Residence by $137,164.82. This is the extent to which the Attachment impairs the Debtor's presumed exemption, and the extent to which the Attachment will be avoided by order of this Court.

206 B.R. at 22. In the Montana cases, the courts reached similar results where the sum of subsections (i) through (iii) exceeded the value of the property and that sum was less than the judicial lien sought to be avoided. Indeed, in *Todd*, the court observed that the same result obtained using the *Brantz* formula.

■ Although legislative history is often valuable in determining the meaning of provisions of the Bankruptcy Code, the Supreme Court has made clear that "[t]he plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989). The Court of Appeals for the First Circuit has stated the following:

> ... The "plain meaning" of statutory language controls its construction. But the meaning, or "plainness," of discrete statutory language is to be gleaned from the statute *as a whole*, including its overall policy and purpose. "Literal" interpretations which lead to absurd results are to be avoided.

> \*    \*    \*    \*    \*    \*

> Plain statutory language does not prompt recourse to countervailing legislative history.

*Summit Invest. and Development Corp. v. Leroux*, 69 F.3d 608, 610 (1st Cir.1995) (citations omitted, emphasis in original).

■ In the present case, § 522(f)(2)(A) is unambiguous: the formula for determining impairment of an exemption and its application are straightforward. Rather, it is the House Report that is confusing, because the language employed is so plain, but the cited decisions do not fit neatly within the context of the hypothetical fact patterns. Because the legislative history does not explicitly state that partially secured judicial liens that encumber equity over and above the total sum of unavoidable liens and the allowable exemption can be avoided in an amount that exceeds the amount of the debtors' claimed exemptions, rather than in their entirety, this Court concludes that it must be guided by the plain language of the statute without reference to what may be inferred from the legislative history. *Ron Pair*, 489 U.S. at 241, 109 S.Ct. at 1030.

Applying the § 522(f)(2)(A) formula to the facts of this case requires a determination of

the value of Property.[5]  In the Debtor's view, Peoples' judicial lien can be avoided to the extent of $198,778.87.  If Peoples' appraised value is utilized, its lien could be avoided only to the extent of $105,778.87.

## IV.  CONCLUSION

In accordance with the foregoing, the Court concludes that partially undersecured judicial liens need not be avoided in their entirety in applying the formula under section 522(f)(2)(A).  Accordingly, the Court continues Peoples' Motion for Relief from Stay until the evidentiary hearing to determine the value of the Charlestown Property, which shall be scheduled forthwith.

---

**5.**  Parenthetically, because § 522(f)(2)(A)(iii) refers to a hypothetical rather than an actual state of affairs, the Court must consider "the amount of the exemption that the debtor could claim if there were no liens on the property."  In *In re Moe*, 179 B.R. 654, 656 (Bankr.D.Mont.1995), the debtor claimed an exemption in excess of the exemption permitted under state law and neither the trustee nor any creditors timely objected to the claimed exemption.  The court determined that "the statutory language specifically mandates the bankruptcy court ... to take the exemption the Debtor 'could claim,' not the exemption claimed and allowed in the schedule of exemptions."  In the instant case, because the Debtor used the bulk of her available federal exemptions for other personal property, she could claim only the balance for her homestead.  Thus, this Court is not confronted with the issue addressed by the court in *Moe*.